STATE OF NORTH CAROLINA v. ONZORA FITZGERALD JOHNSON AND
JERRY WAYNE WHISONANT, JR., DEFENDANTS

No. COA03-686

(Filed 4 May 2004)

## 1. Criminal Law— joinder of trials—motion to sever

The trial court did not abuse its discretion in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case by denying a defendant's motion to sever his trial from his codefendant, because: (1) although the codefendant objected to testimony that it was the codefendant's idea to commit the robbery, a witness was permitted to testify that it was not defendant's idea to commit the robbery; (2) although the codefendant objected to testimony that defendant was cooperative during the interview, a detective was permitted to testify that defendant was upset and crying during the interview and that he was neither combative nor under the influence of alcohol; (3) the defenses presented were not so antagonistic and irreconcilable that defendant was denied a fair trial; (4) although defendant contends joinder likely confused the jury about evidence presented against each defendant, defendant cites no instance in the record where evidence applicable only to the codefendant was admitted and defendant failed to assign error to jury instructions

1

that he contends were confusing; and (5) although a witness was not permitted to testify that defendant asked immediately after the robbery why the codefendant pulled out a gun, the exclusion of the testimony was due to the State's objection and was not caused by defendant being tried jointly with his codefendant.

**2. Evidence— cross-examination—defendant unaware gun was to be used during robbery**

The trial court did not err in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case by limiting a witness's cross-examination by excluding defendant's statement immediately after the robbery inquiring why his codefendant pulled out a gun, because: (1) the omitted statement was not so exculpatory that it was likely that its omission improperly influenced the jury's verdict; (2) whether defendant was aware that a gun was going to be used during the robbery was immaterial to whether he intended to participate in the robbery; and (3) the witness was permitted to testify that defendant was very angry after the robbery and that there was hostility between defendant and the codefendant.

**3. Robbery— dangerous weapon—instructions—acting in concert**

The trial court did not err in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case by failing to instruct the jury in accordance with defendant's request concerning the theory of acting in concert, because: (1) the jurors were instructed that they need not find that defendant had intent to use a dangerous weapon in order to be convicted of robbery with a dangerous weapon, but that they need only find that defendant acted in concert to commit robbery and that his codefendant used the dangerous weapon in pursuance of that common purpose to commit robbery; and (2) the instruction was a correct statement of law.

**4. Appeal and Error— preservation of issues—failure to make assignment of error**

Although defendant contends the trial court erred by failing to instruct the jury to consider each defendant separately when determining their guilt or innocence as to the crimes charged, this assignment of error is dismissed because: (1) defendant failed to

preserve this issue for review by failing to set out this argument as an assignment of error in the record; and (2) assuming arguendo that this argument was properly preserved, there was no prejudicial error.

## 5. Robbery— dangerous weapon—sufficiency of evidence— danger or threat to life of victim

The trial court did not commit plain error when it submitted to the jury the issue of defendant's guilt of robbery with a firearm or other dangerous weapon instead of the lesser-included offense of common law robbery as to one of the victims even though defendant contends there was insufficient evidence to prove danger or threat to the life of the victim by the possession, use, or threatened use of a dangerous weapon based on the fact that the victim did not see or know about a gun during the robbery, because: (1) the question is whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, and not whether the victim was scared or in fear of his life; and (2) evidence was presented showing that a gun was pointed toward the victim during the robbery, thus putting his life in danger.

## 6. Appeal and Error— preservation of issues—assignment of error—raising a number of different legal issues

While defendant's assignments of error purporting to raise a number of different legal issues plainly violated the requirements of N.C. R. App. P. 10(c)(1), the interests of justice require the Court of Appeals to exercise its discretion under N.C. R. App. P. 2 and address the merits of defendant's appeal.

## 7. Evidence— exhibit—supplemental report—statement by nontestifying codefendant—no *Bruton* violation

The trial court did not violate defendant's right to confrontation in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case by admitting State's Exhibit #8 into evidence which was a supplemental report prepared by a detective regarding his interrogation of a coparticipant, because: (1) the exhibit was redacted to eliminate any statements made by a nontestifying codefendant; and (2) defendant's argument that there was a clear implication from the exhibit and other evidence presented at trial that the codefendant told the detective that a person named "Bomber Clock," who was identified as defendant,

participated in the robbery is speculative and insufficient to constitute the introduction of a nontestifying codefendant's statement within the confines of *Bruton v. United States*, 391 U.S. 123 (1968).

**8. Robbery— dangerous weapon—instruction—lesser-included offense of common law robbery**

The trial court did not err by concluding that defendant was not entitled to a jury instruction regarding the lesser-included offense of common law robbery of one of the victims, because: (1) when a defendant is charged with robbery with a dangerous weapon and the uncontradicted evidence indicates the robbery was accomplished by the use of what appeared to be a dangerous weapon, the trial court is not required to submit an instruction on the lesser-included offense of common law robbery; and (2) the testimony of two witnesses that a gun was used to perpetrate the robbery was uncontradicted.

**9. Conspiracy— robbery with a dangerous weapon—sufficiency of evidence**

The trial court did not err by concluding that the State presented sufficient evidence of conspiracy to commit robbery with a dangerous weapon, because: (1) it was not essential for the parties to expressly agree to use a dangerous weapon prior to the robbery in order to submit a charge of conspiracy to commit robbery with a dangerous weapon to the jury, but instead it was essential that the parties had a mutual implied understanding to commit robbery with a dangerous weapon; and (2) the facts were sufficient to support a prima facie case that defendant conspired with others to commit robbery with a dangerous weapon at the moment he pointed a gun at the victims.

**10. Conspiracy— armed robbery—failure to instruct on lesser-included offense**

The trial court did not err by failing to instruct the jury on conspiracy to commit common law robbery, because: (1) the trial court is not obligated to submit a charge on a lesser-included offense unless there is evidence from which the jury could find that the included crime of lesser degree was committed; and (2) the State's conspiracy charge against defendant was based on an inference that defendant formed a mutual implied understanding with his coconspirators to commit robbery with a dangerous weapon at the moment defendant pointed a gun at the victims,

and there was no evidence from which a jury could find that defendant's actions during the robbery created an inference that defendant conspired to commit common law robbery.

**11. Criminal Law— judge's pretrial comments—unavailability of transcript**

Although the trial court erred in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case by failing to affirmatively exercise its discretion under N.C.G.S. § 15A-1233(a) based on its pretrial comments telling the jurors to remember the evidence because "we don't have anything that can bring it back there to you" even though there was no request by the jury to review any testimony or transcripts, the error was not prejudicial since defendant did not argue any circumstances indicating that there was any testimony or evidence in this case involving issues of some confusion and contradiction that would make it likely that the jury would have wanted to review it.

**12. Jury— voir dire—automatic disregard of testimony in light of plea bargain**

The trial court did not abuse its discretion in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case by permitting the State to ask potential jurors during voir dire if there was anyone who would automatically disregard any and all testimony of a coparticipant even in light of other believable evidence if the jury found out that the coparticipant actually received a plea bargain, because: (1) the question was not directed at discerning whether the potential jurors would believe the coparticipant in spite of his having agreed to a plea bargain, but whether jurors would be able to consider his testimony notwithstanding his having agreed to a plea bargain; and (2) the question properly was directed at the potential juror's ability to be fair and impartial.

**13. Appeal and Error— preservation of issues—failure to object**

Although defendant contends the trial court erred in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case by excusing a potential juror for cause, this assignment of error is dismissed because: (1) defendant did not pre-

serve this error for appellate review based on his failure to object at trial; and (2) defendant is not entitled to plain error review.

## 14. Sentencing— prior record level—stipulation

Defendant is not entitled to a new sentencing hearing in a robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon case based on the State's alleged failure to meet its burden of proving by a preponderance of the evidence defendant's prior record level, because the trial court's exchange with defense counsel regarding the worksheet submitted by the State in this case constituted a stipulation by defendant to the prior convictions listed on the worksheet when: (1) defendant did not object to the convictions on the worksheet upon the trial court's inquiry regarding whether he had any questions or concerns about it; and (2) in fact defense counsel answered in the affirmative when the trial court stated that defendant, at the very least, had seven prior record level points which would constitute a level three offender.

Appeal by defendants from judgments entered 22 July 2002 by Judge Larry G. Ford in Rowan County Superior Court. Heard in the Court of Appeals 3 March 2004.

*Roy A. Cooper, III, Attorney General, by Elizabeth N. Strickland, Assistant Attorney General, and James M. Stanley, Jr., Assistant Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Anne M. Gomez, Assistant Appellate Defender, for defendant-appellant Johnson.*

*Bryan Gates, for defendant-appellant Whisonant.*

MARTIN, Chief Judge.

Defendants appeal from judgments imposing active sentences entered upon their convictions by a jury of robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. The evidence presented at trial tended to show the following: at around noon on 19 March 2001, Roger Storey, Anne Corriher, and D.G. Wong were standing beside Mr. Storey's automotive repair shop in Salisbury, North Carolina. As the group was talking, a white Pontiac Grand Am occupied by several individuals drove by slowly as if they were looking at

something. About five minutes later, the same vehicle returned and pulled over in front of the group. A man sitting in the passenger seat of the car asked for directions to the bus station. As Mr. Storey attempted to give the individuals directions, the man in the passenger seat started cursing and stated, "We don't want directions, give me your wallet." Mr. Storey began to back up, and the passenger said, "No, this is not a joke, give me your wallet." The passenger got out of the vehicle and Mr. Storey gave him his wallet. At this point, Mr. Storey noticed that a man in the back seat was pointing a sawed off shotgun out the window towards him. The passenger then approached Mr. Wong and Ms. Corriher. Mr. Wong gave him his pocketbook and Ms. Corriher told the man that she did not have a wallet. The passenger then returned to the vehicle and the individuals drove away. As the car drove away, the group noticed a pink rag partially obscuring the license plate, but were able to make out the first two letters, "NT," of the plate.

Mr. Storey testified that there were three black males in the vehicle, but he could not clearly see any of them except for the man in the front passenger seat, whom he later identified in a photo lineup as Elliot Wilds. Ms. Corriher testified that the person in the back seat was pointing a sawed off shotgun at the group; however, she was not able to identify any of the individuals. Mr. Wong testified that he did not see any guns during the robbery and that he remembered seeing a black man who asked for his wallet, and the driver of the car, but that he didn't see anyone else. The following morning, Officer Todd Sides of the Salisbury Police Department saw a white Pontiac Grand Am that had a license plate beginning with the letters "NT." He stopped the automobile, which was occupied by defendant Jerry Whisonant and Elliot Wilds. Both men were arrested and questioned. The police recovered a loaded shotgun, a pink rag, and shotgun shells from the vehicle. During questioning, Wilds gave a statement admitting his involvement in the crimes.

At trial, Wilds testified that defendant Johnson was his first cousin and that defendant Whisonant was a friend of Johnson's that he had met approximately two or three months before the armed robbery. Wilds stated that on the day of the crime, the group was traveling in a white Pontiac Grand Am which belonged to defendant Whisonant's girlfriend. Defendant Whisonant was driving, Wilds was sitting in the passenger seat, and defendant Johnson was sitting in the back seat.

STATE v. JOHNSON

[164 N.C. App. 1 (2004)]

After riding around for two or three hours looking for jobs, the three men began talking about robbing someone. Wilds testified that there was no discussion about the use of a weapon during the robbery; rather, the plan was for Wilds to jump out of the car, scare people, and then grab their wallets. When they saw Mr. Story, Mr. Wong, and Ms. Corriher standing on a corner, they drove by and then went to a nearby Salvation Army building where defendant Whisonant got out of the car and covered the license plate with a pink rag. The men then went back to the place where they had seen the three people standing and Wilds asked the group for directions to the bus station. As Mr. Storey walked up to the car, Wilds jumped out of the car and demanded his wallet and the wallets of the other two people. After collecting wallets from Mr. Storey and Mr. Wong, Wilds jumped back in the car and the men drove away.

Wilds testified that he did not see a gun before the robbery and did not know that a gun was present in the vehicle or during the robbery until he got back into the car and saw the sawed-off shotgun sitting beside defendant Johnson in the backseat. He stated that the men split the money equally and that he threw the wallets into the river.

Prior to trial, defendants' motions to sever were denied. The motions to sever were renewed at the close of the State's evidence and were again denied. In addition, defendants moved to dismiss all charges; the trial court allowed the motions as to charges of possession of a weapon of mass destruction, but denied the motions as to the remaining charges.

Defendant Johnson presented two witnesses in his defense. His girlfriend, Candace Collette Brown, testified that defendant was at home with her at the time of the alleged armed robbery. Landrum Hamm, Mr. Johnson's supervisor for two years at Stokes County Yarn, also testified on his behalf. Defendant Whisonant presented no evidence and neither of the defendants testified.

At the close of all the evidence, defendants' motions to dismiss and to sever were renewed and denied. The jury returned verdicts finding each defendant guilty of two counts of robbery with a dangerous weapon, one count of attempted robbery with a dangerous weapon, and one count of conspiracy to commit robbery with a dangerous weapon. The trial court entered identical judgments as to each defendant, consolidating the two counts of robbery with a dangerous weapon and sentencing each defendant in the presumptive range to a

minimum term of 103 months and a maximum term of 133 months imprisonment, and consolidating the convictions of attempted robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon and sentencing each defendant to a consecutive sentence in the presumptive range for a minimum term of 103 months and a maximum term of 133 months. Defendants appeal.

---

### Defendant Whisonant's Appeal

Defendant Whisonant sets forth eight assignments of error in the record, four of which are argued in his brief. The remaining assignments of error are deemed abandoned. N.C. R. App. P. 28(a).

Initially we consider the State's argument that defendant Whisonant's appeal must be dismissed because he fails to set forth in the record, in accordance with Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure, a legal basis to support his assignments of error. N.C. R. App. P. 10(c)(1). Compliance with the Rules of Appellate Procedure are mandatory and a failure to comply with them subjects an appeal to dismissal. *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999). Nevertheless, we conclude that the interests of justice require that we exercise our discretion and address the merits of defendant's appeal. N.C. R. App. P. 2.

[1] In his first argument, defendant Whisonant contends he was deprived of a fair trial by the denial of his motions to sever his trial from that of defendant Johnson. A trial court is required to grant a motion to sever whenever severance is necessary to achieve or promote "a fair determination of the guilt or innocence of one or more defendants." N.C. Gen. Stat. § 15A-927(c)(2)(a) (2003). "The question of whether defendants should be tried jointly or separately is within the sound discretion of the trial judge, and the trial judge's ruling will not be disturbed on appeal absent a showing that joinder has deprived a defendant of a fair trial." *State v. Evans*, 346 N.C. 221, 232, 485 S.E.2d 271, 277 (1997), *cert. denied*, 522 U.S. 1057, 139 L. Ed. 2d 653 (1998).

Defendant first contends he was denied a fair trial when Wilds was not permitted to testify on cross-examination, based on an objection by co-defendant Johnson, that it was Johnson's idea to commit the robbery. However, Wilds was permitted to testify that it was not defendant Whisonant's idea to commit the robbery. Thus, defendant Whisonant was not unduly prejudiced because the potentially exculpatory testimony was admitted into evidence.

STATE v. JOHNSON

[164 N.C. App. 1 (2004)]

Defendant Whisonant also contends he was denied a fair trial when the detective who interviewed him was not permitted to testify, due to an objection by co-defendant Johnson, that defendant Whisonant was cooperative during the interview. However, the detective was permitted to testify that defendant was upset and crying during the interview and that he was neither combative nor under the influence of alcohol. Although the specific evidence that Whisonant was cooperative could possibly have been favorably considered by the jury, the substance of the proffered evidence was made clear by the testimony which was admitted. Therefore, after considering all of the other evidence in the case, we do not find its exclusion so prejudicial as to entitle defendant Whisonant to a new trial.

Defendant Whisonant next argues his defense was antagonistic to that of co-defendant Johnson, and that the defenses were so conflicting and irreconcilable as to result in an unfair trial. Defendant Whisonant admitted he was driving the vehicle during the robbery, but claimed he was unaware that a crime was going to occur. Defendant Johnson's defense was that he was not present during the robbery. "The test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial." *State v. Lowery*, 318 N.C. 54, 59, 347 S.E.2d 729, 734 (1986) (internal quotation omitted).

After considering all of the evidence, we do not believe the defenses presented in this case were so antagonistic and irreconcilable that defendant was denied a fair trial. Defendant's defense, that he was driving the vehicle but was unaware that a robbery was going to take place, never directly implicated co-defendant Johnson as a perpetrator of the crime. Likewise, Johnson's defense, that he was not present at the robbery, in no way implicated defendant Whisonant as a willing participant during the crime. Thus, we cannot say the "codefendants' defenses are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979) (internal quotation omitted), *cert. denied*, 446 U.S. 929, 64 L. Ed. 2d 282 (1980).

Defendant Whisonant also argues that he was denied a fair trial because the joinder likely confused the jury about evidence presented against each defendant. Prejudice can result where evidence applicable to only one defendant is admitted but no limiting instruction is given to instruct the jury not to consider that evidence against a co-defendant. *See State v. Wilson*, 108 N.C. App. 575, 583, 424 S.E.2d

454, 458, *disc. review denied*, 333 N.C. 541, 429 S.E.2d 562 (1993). Specifically, defendant Whisonant argues that he may have been convicted based on evidence applicable only to Johnson. Defendant Whisonant cites no instance in the record where evidence applicable only to Johnson was admitted; rather, he cites only jury instructions given by the trial court which he contends were confusing. However, defendant failed to assign error to these instructions. We, therefore, find no merit in defendant's argument.

Defendant next contends he was denied a fair trial when Wilds was not permitted to testify about a potentially exculpatory statement made by him. Specifically, Wilds was not permitted to testify on cross-examination that Whisonant said immediately after the robbery, "Why did he pull out the gun?" Wilds was permitted to testify, however, that Whisonant was "very angry" after the robbery and that there was hostility between Johnson and Whisonant. The testimony as to Whisonant's statement was excluded based on an objection by the State that the testimony was self-serving hearsay. Co-defendant Johnson objected only after the trial court had sustained the State's objection. Since the exclusion of the testimony was due to the State's objection, any prejudice occasioned to defendant Whisonant thereby was not caused by his being tried jointly with Johnson and we reject his argument to the contrary.

[2] In a related assignment of error, defendant Whisonant argues the trial court's exclusion of the statement was error. Defendant argued at trial, and in his brief to this Court, that the statement, "Why did he pull out the gun?", qualified as an excited utterance and therefore, should have been admitted as an exception to the hearsay rule.

A trial court "has broad discretion over the scope of cross-examination" and its "rulings regarding the scope of cross examination will not be held in error in the absence of a showing that the verdict was improperly influenced by the limited scope of the cross-examination." *State v. Yearwood*, 147 N.C. App. 662, 665, 556 S.E. 672, 675 (2001) (internal quotation omitted). Thus, even if we were to hold that the trial court erroneously omitted the testimony, to afford defendant relief, we would also have to determine that such error improperly influenced the jury's verdict.

After careful review, we conclude that the omitted statement in this case is not so exculpatory that it is likely that its omission improperly influenced the jury's verdict. The statement goes to defendant's knowledge that a gun was going to be used during the

robbery, not to his knowledge that a robbery was going to take place. Under the theory of acting in concert, upon which the jury was instructed, if two or more persons join in a purpose to commit a crime, each person is responsible for all unlawful acts committed by the other persons as long as those acts are committed in furtherance of the crime's common purpose. *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991). Whether or not defendant was aware that a gun was going to be used during the robbery is immaterial to whether he intended to participate in the robbery and thus, the exclusion of the statement did not unreasonably prejudice defendant's case. Additionally, while Wilds was not permitted to testify as to the statement itself, he was permitted to testify that defendant Whisonant was "very angry" after the robbery and that there was hostility between Whisonant and Johnson. Accordingly, we conclude the trial court's limitation of the cross-examination of Wilds did not improperly influence the jury's verdict.

[3] In his next assignment of error, defendant argues the trial court erred when it declined to instruct the jury in accordance with his request concerning the theory of acting on concert. Defendant requested that the trial court instruct the jury:

2. ACTING IN CONCERT.

For a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons join in a purpose to commit Robbery with a Dangerous Weapon, each of them, if actually or constructively present, is guilty of that crime if the other commits the crime, if they shared a common plan to commit that offense.

The trial court, instead, gave the following instruction:

Now, for a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons join in a purpose to commit robbery, each of them, if actually or constructively present, is not only guilty of that crime if the other commits the crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose to commit armed robbery, or as a natural or probable consequence thereof.

In essence, the jurors were instructed that they need not find that defendant had intent to use a dangerous weapon in order to be convicted of robbery with a dangerous weapon. Instead, they need only

find that defendant acted in concert to commit robbery and that his co-defendant used the dangerous weapon in pursuance of that common purpose to commit robbery. As explained by our Supreme Court in *State v. Barnes*, 345 N.C. 184, 230-33, 481 S.E.2d 44, 69-71 (1997), *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998), this is a correct statement of law and therefore, defendant's assignment of error is overruled.

**[4]** Defendant also argues the trial court erred by not properly instructing the jury to consider each defendant separately when determining their guilt or innocence as to the crimes charged. *See State v. Waddell*, 11 N.C. App. 577, 579, 181 S.E.2d 737, 738 (1971) ("[E]ach defendant [is] entitled to have his individual guilt or innocence considered and determined by the jury separate and apart from how the jury should find as to the other defendant."). However, this argument is not set out as an assignment of error in the record, and thus, defendant fails to preserve it for our review. N.C. R. App. P. 10(a). Assuming, *arguendo*, that the issue had been properly preserved by an assignment of error, we find, after careful review, no prejudicial error in the trial court's instructions.

**[5]** In his final argument, defendant contends the trial court committed plain error when it submitted to the jury the issue of defendant's guilt of robbery with a firearm or other dangerous weapon, instead of the lesser included offense of common law robbery, as to D.G. Wong. The Court will reverse for plain error "only in exceptional cases where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Davis*, 349 N.C. 1, 29, 506 S.E.2d 455, 470 (1998) (internal quotations omitted), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999).

The elements of robbery with a firearm or other dangerous weapon are set forth in N.C. Gen. Stat. § 14-87 (2003). Our Supreme Court stated in *State v. Joyner*, 295 N.C. 55, 243 S.E.2d 367 (1978):

[T]he essentials of the offense set forth in G.S. 14-87 are (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of 'firearms or other dangerous weapon, implement or means'; and (3) danger or threat to the life of the victim.

*Id.* at 63, 243 S.E.2d at 373.

Defendant contends there was insufficient evidence to prove danger or threat to the life of D.G. Wong by the possession, use, or threatened use of a dangerous weapon because Mr. Wong did not see or know about a gun during the robbery. However, "[t]he question in a [robbery with a firearm or other dangerous weapon] case is whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, not whether the victim was scared or in fear of his life." *Id.* Evidence was presented at trial showing that a gun was pointed toward Mr. Wong during the robbery, thus, putting his life in danger. Accordingly, there was substantial evidence to support the trial court's instruction on robbery with a firearm or other dangerous weapon as to D.G. Wong. Defendant's final assignment of error is overruled.

### Defendant Johnson's Appeal.

Defendant Johnson sets forth thirty-eight assignments of error in the record, eight of which are argued in his brief. The remaining assignments of error are deemed abandoned. N.C. R. App. P. 28(a).

[6] As an initial matter, the State argues that defendant Johnson's appeal should be dismissed due to his violation of Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure in failing to confine, so far as practicable, the legal basis for his assignments of error in the record to a single issue of law. N.C. R. App. P. 10(c)(1).

Defendant sets forth the following purported legal basis for each of his thirty-eight assignments of error:

> . . . on the ground that the Court's action violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, Article I, §§ 18, 19, 20, 23, 24, 27 and 35 of the North Carolina Constitution, and the North Carolina common and statutory law. Defendant asserts constitutional error, trial error, structural error, or in the alternative, plain error.

Our Supreme Court has stated that an assignment of error "purporting to raise a number of different legal issues[] is insufficient under our Rules of Appellate Procedure to raise any of them." *State v. McCoy*, 303 N.C. 1, 19, 277 S.E.2d 515, 529 (1981). While defendant's assignments of error plainly violate the requirements of Rule 10(c)(1), we conclude, as we did with respect to defendant Whisonant, that the interests of justice require us to exercise our discretion and address the merits of defendant's appeal. N.C. R. App. P. 2.

**[7]** Defendant first contends the trial court erred when it admitted State's Exhibit #8 into evidence. State's Exhibit #8 is a supplemental report prepared by Detective R. K. Harris of the Salisbury Police Department regarding his interrogation of Wilds. The report was redacted in parts to omit any statements allegedly made by co-defendant Whisonant and states, in pertinent part:

> After about forty-five minutes of interviewing [Wilds], I left him in the polygraph/interview room while I went to talk to Det. Colvin about what [Wilds] had told me. **[REDACTED].** I then went back into the polygraph/interview room with [Wilds] to discuss what I had found out. [Wilds] continued to deny any involvement with the robbery. I advised him to set [sic] in the room and think about what he had told me. A short time later, I went back in and asked [Wilds] to get his heart right and tell me about the robbery. [Wilds] then looked at me and stated that he had robbed the people. . . . I then advised Det. Colvin what had transpired. **[REDACTED].** I went back into the room and asked [Wilds] who "Bomber-Clock" was. [Wilds] stated that it was Onzoro Johnson. He also stated that he was the third suspect with them at the time of the robbery.

Later at trial, evidence was presented to show that at the same time Wilds was being interviewed by Detective Harris, Detective Colvin was interviewing defendant Whisonant. Defendant Johnson argues his confrontation rights were violated when State's Exhibit #8 was admitted into evidence because it implies that defendant Whisonant told Detective Colvin that a person named "Bomber Clock" was present during the robbery.

It is a violation of a criminal defendant's confrontation rights to introduce into evidence the statement of a non-testifying co-defendant implicating the defendant. *Bruton v. United States,* 391 U.S. 123, 126, 20 L. Ed. 2d 476, 479 (1968). In this case, State's Exhibit #8 was redacted to eliminate any reference to statements made by Defendant Whisonant. Thus, defendant's reliance on *Bruton* is without merit.

Nonetheless, defendant Johnson argues that while there are no direct statements by defendant Whisonant contained in State's Exhibit #8, there is a "clear implication" from the exhibit and other evidence presented at trial that Defendant Whisonant told Detective Colvin that a person named "Bomber Clock" participated in the robbery. We find this argument to be speculative at best, and not suffi-

cient to constitute the introduction of a non-testifying co-defendant's statement within the confines of *Bruton*. Defendant's assignment of error is overruled.

In the next two assignments of error argued in his brief, defendant Johnson contends the State presented insufficient evidence that he committed a robbery with a dangerous weapon of Mr. Wong, or alternatively, the trial court erred by failing to instruct the jury on the lesser included offense of common law robbery as to Mr. Wong. We find no error in either respect.

We have addressed the sufficiency of the evidence in our consideration of defendant Whisonant's appeal and there is no reason to repeat our discussion. For the reasons set forth therein, we overrule defendant Johnson's similar assignment of error.

[8] In his alternative argument, defendant Johnson contends that he was entitled to a jury instruction regarding the lesser included offense of common law robbery of Mr. Wong. "As a general rule, when there is evidence of a defendant's guilt of a crime which is a lesser included offense of the crime stated in the bill of indictment, the defendant is entitled to have the trial judge submit an instruction on the lesser included offense to the jury." *State v. Tarrant*, 70 N.C. App. 449, 451, 320 S.E.2d 291, 293 (1984). It has been held that when the defendant is charged with robbery with a dangerous weapon and "the uncontradicted evidence indicates that the robbery, if perpetrated, was accomplished by the use of what appeared to be a dangerous weapon," the trial judge is not required to submit an instruction on the lesser included offense of common law robbery. *Id.* at 451-52, 320 S.E.2d at 294. In this case, the testimony of two witnesses that a gun was used to perpetrate the robbery was uncontradicted. Therefore, the trial court was not required to submit an instruction for the lesser included offense of common law robbery as to Mr. Wong.

[9] Defendant next argues the State presented insufficient evidence that he committed conspiracy to commit robbery with a dangerous weapon, or alternatively, the trial court erred by failing to instruct the jury on conspiracy to commit common law robbery. We disagree.

Defendant first argues there was insufficient evidence to support a conviction of conspiracy to commit robbery with a dangerous weapon because there is no evidence that the parties discussed using a weapon prior to the robbery. Indeed, the State's own witness, Wilds, testified that he was not aware there was a weapon in the vehicle

prior to the robbery and there was no mention of a weapon during the parties' discussions prior to the robbery.

Our Supreme Court stated in *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975):

> A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. To constitute a conspiracy it is not necessary that the parties should have come together and agreed in *express* terms to unite for a common object: A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.

*Id.* at 615-16, 220 S.E.2d at 526 (internal quotations and citations omitted). Thus, it was not essential for the parties to expressly agree to use a dangerous weapon prior to the robbery in order to submit a charge of conspiracy to commit robbery with a dangerous weapon to the jury. *See State v. Goldberg*, 261 N.C. 181, 202, 134 S.E.2d 334, 348 (1964) ("It is not essential that each conspirator have knowledge of the details of the conspiracy or of the exact part to be performed by the other conspirators in execution thereof; nor is it necessary that the details be completely worked out in advance to bring a given act within the scope of the general plan."), *overruled on other grounds by, News & Observer Pub. Co. v. State*, 312 N.C. 276, 283, 322 S.E.2d 133, 138 (1984). Rather, it was only essential that there be evidence that the parties had a mutual, implied understanding to commit robbery with a dangerous weapon.

In this case, the evidence presented at trial tended to show that Wilds, Whisonant, and defendant expressly agreed to rob the three victims when they saw them standing on the corner; however, there was no discussion of using a weapon at this time. As the robbery began, defendant Johnson pointed a sawed-off shotgun out the window at the victims while Wilds took their wallets and Whisonant waited in the driver's seat. The men then drove away, split the money equally, and threw the wallets into the river. These facts are sufficient to support a *prima facie* case that defendant conspired with others to commit robbery with a dangerous weapon at the moment he pointed the gun at the victims. To be sure, our Supreme Court stated in *State v. Carey*, 285 N.C. 497, 206 S.E.2d 213 (1974):

> A man may join a conspiracy by word or by deed. However, criminal responsibility for a conspiracy requires more than a merely

passive attitude toward an existing conspiracy. One who commits an overt act with knowledge of the conspiracy is guilty. And one who tacitly consents to the object of a conspiracy and goes along with the other conspirators, actually standing by while the others put the conspiracy into effect, is guilty though he intends to take no active part in the crime.

*Id.* at 502-03, 206 S.E.2d at 218 (internal quotation omitted). We, accordingly, overrule defendant's assignment of error.

[10] Defendant argues in the alternative that he was entitled to have the trial judge submit an instruction to the jury on conspiracy to commit common law robbery. As previously discussed, the trial court is not obligated to submit a charge on a lesser included offense unless there is evidence "from which the jury could find that the included crime of lesser degree was committed." *State v. Tarrant*, 70 N.C. App. 449, 452, 320 S.E.2d 291, 294 (1984). In this case, the State's conspiracy charge against defendant was based on an inference that defendant formed a mutual, implied understanding with his co-conspirators to commit robbery with a dangerous weapon at the moment he pointed the gun at the victims. Since it is uncontradicted that the defendant, if present, pointed a gun at the victims, there is no evidence from which a jury could find that the defendant's actions during the robbery created an inference that defendant conspired to commit common law robbery. Accordingly, the trial court did not err when it failed to submit an instruction to the jury on conspiracy to commit common law robbery.

[11] Defendant next argues the trial court committed prejudicial error by failing to affirmatively exercise its discretion under G.S. § 15A-1233(a). N.C. Gen. Stat. § 15A-1233(a) (2003) states:

(a) If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

Our Supreme Court has held that it is error for the trial court to refuse to exercise its discretion pursuant to this statute "upon the ground

that the trial court has no power to grant the motion in its discretion." *State v. Barrow*, 350 N.C. 640, 646, 517 S.E.2d 374, 378 (1999) (internal quotation omitted). Where error is prejudicial, the defendant is entitled to a new trial. *Id.*

In this case, the trial court made the following comments to the jury after it was empaneled, but prior to opening arguments:

> I'm going to impose upon you in just a moment one of the most important things you are going to find when I charge you as to the law in this case. I'm going to tell you that it is your duty to remember the evidence. ***There is no transcript to bring back there.*** She might get one typed in a month. You see what I mean, we don't have the fancy equipment that you might see on TV. I don't even think its out there, but if it was, I can assure you the State of North Carolina won't spend the money for it. I don't mind putting that in the record because higher Judges agree with me on that. ***So, we don't have anything that can bring it back there to you.*** So, listen carefully, pay close attention. You are the triers of fact and it is up to you collectively, the twelve of you to go back there to remember the evidence and that is why we have twelve. Surely one of you can remember the evidence on everything that come in.

(Emphasis added).

In *Barrow*, the trial court made similar comments in response to a request by the jury for transcripts of testimony:

> Ladies and gentlemen of the jury, although the Court Reporter obviously was taking down and continues to take down everything that's in fact been said during the trial, what she's taking down has not yet been transcribed. And ***the Court doesn't have the ability to now present to you the transcription of what was said during the course of the trial.***

*Id.* at 646-47, 517 S.E.2d at 378 (emphasis added). The *Barrow* Court held that "the trial court's statement that it 'doesn't have the ability to now present to you the transcription of what was said during the course of the trial' suggests a failure to exercise discretion." *Id.* at 647, 517 S.E.2d at 378. Likewise, we find a failure to exercise discretion in this case where the trial court stated, "we don't have anything that can bring it back there to you."

The State argues this case is distinguishable from *Barrow* in that there was no request by the jury to review any testimony or tran-

scripts. While the statute refers solely to requests made by the jury for review of certain testimony or evidence, we nonetheless find that the purpose and intent of the statute are violated in this case since the trial court's pretrial comments could have foreclosed the jury from making a request for such testimony or evidence. Thus, we find error even without a request by the jury.

The State also argues that defendant waived any alleged error by failing to object to the trial court's comments. However, pursuant to *State v. Ashe*, 314 N.C. 28, 40, 331 S.E.2d 652, 659 (1985), defendant's error was automatically preserved for review notwithstanding his failure to object at trial.

Having found error, we must next determine whether such error was prejudicial. The burden is on the defendant to prove that a trial error not arising from rights vested under the Constitution of the United States is prejudicial. N.C. Gen. Stat. § 15A-1443(a) (2003). Prejudice is shown "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." *Id.*

In this case, a primary factor linking defendant to the crimes was Wilds' testimony. Defendant argues that where a conviction hinges in large part on the credibility of an alleged accomplice who testifies at trial, it is prejudicial error to deny the jury an opportunity to ask to review that testimony. We disagree.

It is only prejudicial error to deny the jury an opportunity to ask to review certain testimony or evidence where the defendant can show that (1) such testimony or evidence "involved issues of some confusion and contradiction," and (2) it is likely that a jury would want to review such testimony. *See State v. Johnson*, 346 N.C. 119, 126, 484 S.E.2d 372, 377 (1997) (finding prejudicial error where the trial court refused to exercise its discretion to determine whether the jury may be permitted to review certain testimony that involved issues of some confusion and contradiction).

Defendant argues no circumstances indicating there was any testimony or evidence in this case involving issues of some confusion and contradiction that would make it likely that the jury would have wanted to review it. Thus, we find no prejudicial error resulting from the trial court's pretrial comments in this case.

[12] In his next assignment of error, defendant argues the trial court erred when it permitted the State to ask potential jurors during *voir*

*dire*, "is there anyone who . . . will automatically disregard any and all testimony of Elliot Wil[ds] even in light of the other believable evidence if you find out that he actually received a plea bargain?" We discern no abuse of the trial court's discretion in permitting this question to be asked.

"The nature and extent of the inquiry made of prospective jurors on *voir dire* ordinarily rests within the sound discretion of the trial court." *State v. Bond*, 345 N.C. 1, 17, 478 S.E.2d 163, 171 (1996), *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997). It is generally considered an abuse of discretion to permit counsel "to 'stake out' a prospective juror in advance regarding what his decision might be under certain specific factual scenarios . . . ." *State v. Jaynes*, 353 N.C. 534, 549, 549 S.E.2d 179, 192 (2001), *cert. denied*, 535 U.S. 934, 152 L. Ed. 2d 220 (2002).

The question presented to the potential jurors in this case was not directed at discerning whether the potential jurors would believe Wilds in spite of his having agreed to a plea bargain, but whether the jurors *would be able to consider* his testimony notwithstanding his having agreed to a plea bargain. This question is proper as it is directed at the potential juror's ability to be fair and impartial. *See State v. Conner*, 335 N.C. 618, 644, 440 S.E.2d 826, 841 (1994) (holding that questions by defense counsel as to whether prospective jurors would be able to consider a life sentence in a particular case or would automatically vote for death upon conviction were proper to discern impartiality and fairness).

**[13]** Next, defendant argues the trial court erred by excusing juror Melanie Jordan for cause. Juror Jordan raised her hand in response to the above quoted inquiry of the jurors. Upon further questioning, Juror Jordan stated, "I don't feel like I could believe him a hundred percent." Despite an effort by defendant to rehabilitate, the trial court allowed the State's motion to dismiss Juror Jordan for cause.

Defendant concedes that he did not object at trial to the excusal of Juror Jordan for cause. Thus, defendant has failed to preserve this error for appellate review. *State v. Haselden*, 357 N.C. 1, 10, 577 S.E.2d 594, 600 ("This Court will not consider arguments based upon matters not presented to or adjudicated by the trial court."), *cert. denied*, 157 L. Ed. 2d 382, 124 S. Ct. 475 (2003). In addition, defendant is not entitled to plain error review. *Id.* ("This Court has not applied the plain error rule to issues which fall within the realm of the trial

court's discretion, and we decline to do so now.") (internal quotation omitted). Therefore, defendant's argument is procedurally barred and we decline to address it.

**[14]** Finally, defendant contends he is entitled to a new sentencing hearing because the State failed to meet its burden of proving, by a preponderance of the evidence, his prior record level. At sentencing, the State presented a worksheet to the trial court alleging that defendant was a level three prior offender in that he had eight prior record points based on three felony convictions in New York, a conviction for DWI in North Carolina, and for being on probation at the time of his commission of the offenses charged in this case. Upon receiving the worksheet, the trial court directed the following questions to defendant's counsel:

THE COURT: Mr. Gray, would you stand with your client and let's talk about this worksheet. Do you have any questions about the worksheet or any other concerns about it, sir?

[DEFENDANT'S COUNSEL]: Your Honor, we have seen the worksheet and the record. We understand the State has treated it as a Class I felony, and realized that under the rules, they have not established that the offense, or identical offenses, is [sic] offenses in the State of North Carolina; however, we would like to bring that to the Court and show that for the record.

THE COURT: That is on the—

[DEFENDANT'S COUNSEL]: On all the three charges for the State of New York, Your Honor.

THE COURT: Each one of them a Class I?

[DEFENDANT'S COUNSEL]: They are treating them as a Class I felony.

THE COURT: Well, that, of course, is the lowest level, we understand.

[DEFENDANT'S COUNSEL]: Yes, sir.

THE COURT: I guess that's why we're going the lowest level because if they're felonies, they have to be at least that much.

[DEFENDANT'S COUNSEL]: I understand.

THE COURT: And do you agree that he's on pretrial release?

[DEFENDANT'S COUNSEL]: I'm not sure whether he was on pretrial release or not, Your Honor. It doesn't matter, Your Honor, for the one point, won't make any difference.

THE COURT: One point would still keep it in the level three.

[DEFENDANT'S COUNSEL]: Yes, sir.

THE COURT: So, even if you disagree with that, certainly, it would be seven—seven points, which would still make him a level three. You would have to get down below five points to make it a level two.

[DEFENDANT'S COUNSEL]: Yes, Your Honor.

THE COURT: All right, you may have a seat.

Sometime after this exchange, the trial court sentenced defendant as a level three prior offender in the presumptive range.

"The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction." N.C. Gen. Stat. § 15A-1340.14(f) (2003). A prior conviction may be proved by any of the following methods:

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

*Id.* It has been repeatedly held that the submission of a worksheet by the State is insufficient to satisfy the State's burden under this statute; therefore, we must determine whether the trial court's exchange with the defendant's counsel regarding the worksheet submitted by the State in this case constituted a stipulation by the defendant to the prior convictions listed on the worksheet. *See State v. Eubanks*, 151 N.C. App. 499, 505, 565 S.E.2d 738, 742 (2002).

In *Eubanks*, this Court found that the defendant had stipulated to the prior convictions listed on a worksheet submitted by the State where the defendant stated that he had no objections to the worksheet. *Id.* at 505-06, S.E.2d at 742-43. Similarly, in this case, defendant

Johnson's counsel did not object to the convictions on the worksheet upon the trial court's inquiry regarding whether he had any questions or concerns about it. In fact, defendant Johnson's counsel answered in the affirmative when the trial court stated that the defendant, at the very least, had seven prior record level points which would constitute him a level three offender. We interpret this exchange between the trial court and defendant Johnson's counsel to be a stipulation by the defendant of the prior convictions listed on the worksheet submitted by the State. Accordingly, we overrule defendant Johnson's final assignment of error.

Defendant Whisonant's appeal:  No Error.

Defendant Johnson's appeal:  No Error.

Judges HUDSON and GEER concur.