STATE OF NORTH CAROLINA v. ROGER WILLIAM GILES

No. 8628SC575

(Filed 16 December 1986)

1. **Homicide § 21.7; Robbery § 4.3— second degree murder—armed robbery—sufficiency of evidence**

   The State's evidence was sufficient to show that defendant, whether acting alone or together with a codefendant pursuant to a common purpose, committed the crimes of second degree murder and armed robbery where it tended to show that defendant initially disabled the victim when the victim entered a shed by striking him with a pistol; either defendant or the codefendant struck the victim in the head with an ax and caused his death; after the attack on the victim, defendant left the shed and asked the victim's wife to go inside to get her husband a drink of water; and when arrested, defendant had the money taken from the victim in his pocket.

2. **Criminal Law § 75.9— spontaneous statement by defendant—admissibility**

   The evidence supported the trial court's determination that defendant's statement, "The old man's money is in my right front pocket," made within a few minutes after his arrest and without *Miranda* warnings, was spontaneous and admissible.

**3. Criminal Law § 75.10— in-custody statement voluntarily made**

The evidence supported the trial court's determination that defendant's statement that he hit the victim and knocked him down but the codefendant beat him with an ax was made voluntarily after defendant had been advised of his constitutional rights and was thus admissible into evidence.

**4. Criminal Law § 74.3— joint trial—defendant's confession—deletion of references to codefendant**

The trial court did not abuse its discretion in ordering a joint trial of defendant and a codefendant in an armed robbery and murder case where the *Bruton* rule and N.C.G.S. § 15A-927(c)(1) were complied with by sanitizing defendant's statement by deleting all references to the codefendant before the statement was admitted into evidence, and where the deletions did not materially change the nature of defendant's statement as to the reason he struck the victim with a gun.

**5. Criminal Law § 40.1— transcript of prior hearing—witness now deceased**

A transcript of testimony given by a witness at defendant's juvenile transfer hearing was admissible in defendant's robbery and murder trial under N.C.G.S. § 8C-1, Rule 804(b)(1) where the witness is now deceased, and defendant had the opportunity to cross-examine the witness at the previous hearing.

APPEAL by defendant from *Allen (C. Walter), Judge.* Judgment entered 14 September 1984 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 29 October 1986.

Defendant was indicted for first degree murder and robbery with a dangerous weapon. His trial was consolidated with that of his codefendant, William Lee Rasor. Defendant was convicted of robbery with a dangerous weapon and second degree murder. He was given concurrent presumptive sentences of fourteen and fifteen years respectively.

At trial, evidence was presented tending to show the following facts. On 19 March 1984, defendant and Rasor escaped from the Juvenile Evaluation Center in Swannanoa, North Carolina where they had been incarcerated as delinquent juveniles. They spent that night under a bridge and on the evening of March 20, defendant and Rasor broke into the home of Garland Norton. They vandalized the house, wrote "red rum" ("murder" spelled backwards) on a wall, made several long distance phone calls and stole guns, ammunition, a knife and some clothing. They left the Norton residence sometime on March 22.

Defendant and Rasor spent the night of March 22 in a shed owned by John and Georgia McMahan. On the morning of March

State v. Giles

23, Georgia McMahan went outside to hang her clothes and noticed defendant in the shed. She also noticed shotgun shells on the floor of the shed. She asked defendant what he was doing there and he said, "nothing." Defendant talked with Mrs. McMahan and offered to help her hang out the clothes. Mrs. McMahan became upset by defendant's continued presence and returned to her house. She told her 86-year-old husband, John, that there was a prowler outside.

Mr. and Mrs. McMahan then went outside to the clothesline and asked defendant what he was doing there. Again, defendant said, "nothing." John McMahan and defendant then walked into the shed while Mrs. McMahan remained by the clothesline.

When John McMahan saw the shells on the floor of the shed, he told defendant that he was going to "call the law." Defendant testified that when McMahan turned, he hit him in the back of the head with a pistol. He also testified that when McMahan started to get up, Rasor came out of hiding, grabbed an ax, and hit McMahan on the head two or three times. He further testified that when McMahan fell, Rasor took McMahan's wallet and handed him the money. Defendant then walked over to the clothesline and asked Mrs. McMahan, who had not seen the attack in the shed, to go inside to get her husband a drink of water. When the police arrived, defendant walked out of the shed and was arrested.

After arresting defendant, Officer Cole of the Buncombe County Sheriff's Department returned to the shed to assist McMahan. As Cole attempted to help McMahan, Rasor pointed a rifle out from his hiding place inside the shed. The officer commanded Rasor to lay down the rifle which Rasor eventually did. Rasor was immediately apprehended by the officer.

John McMahan suffered a traumatic head injury as a result of the attack. Approximately two weeks later, McMahan died. The doctor who performed the autopsy determined that the traumatic head injury was the initiating factor in a chain of events leading to McMahan's death.

From the judgment imposing sentence, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Joan H. Byers, for the State.*

*Assistant Appellate Defender Robin E. Hudson and Appellate Defender Malcolm Ray Hunter, Jr., for defendant appellant.*

ARNOLD, Judge.

[1] In his first assignment of error, defendant contends that the trial court erred in entering judgment against him for second degree murder and robbery with a dangerous weapon because the evidence was insufficient. We do not agree.

Second degree murder is the unlawful killing of a human being with malice. G.S. 14-17. The essential elements of the offense of armed robbery are (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim. *State v. Joyner,* 295 N.C. 55, 243 S.E. 2d 367 (1978). When a defendant moves for dismissal based on the insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the offense charged, and evidence of the defendant being the one who committed the crime. *State v. Bullard,* 312 N.C. 129, 322 S.E. 2d 370 (1984). If that evidence is present, the motion to dismiss is properly denied. *Id.*

In the case *sub judice,* the jury was instructed on the theory of acting in concert. "To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose." *State v. Joyner,* 297 N.C. 349, 356, 255 S.E. 2d 390, 395 (1979). A defendant may be convicted of a crime under the theory of concerted action if he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime. *Id.* The theory of acting in concert does not require an express agreement between the parties. All that is necessary is an implied mutual understanding or agreement to do the crimes. *See id.*

Defendant was present at the scene of the crime. He admitted that he initially disabled McMahan by striking him with a pistol. He also admitted that he had the money which had been

taken from the victim's wallet. After the attack on McMahan, defendant left the shed and told Mrs. McMahan that her husband wanted a drink of water. There was evidence at trial that Rasor administered the deadly blows, however, Rasor testified that it was defendant who had wielded the ax.

Evidence in this case is clearly sufficient to show that defendant, whether acting alone or together with Rasor pursuant to a common purpose, committed the crimes of second degree murder and armed robbery against John McMahan. The trial court properly entered judgment against defendant for second degree murder and robbery with a dangerous weapon.

In his second assignment of error, defendant contends that he is entitled to a new trial because the trial judge committed prejudicial error both in conducting voir dire, and in making findings and conclusions regarding the admissibility of statements made by the defendant. Defendant makes three arguments under this assignment of error.

[2] First, defendant argues that the trial court erred by not suppressing defendant's statement, "The old man's money is in my right front pocket." Defendant asserts that this statement was coerced in response to custodial interrogation.

On voir dire, the trial court found as fact that "this statement was made prior to the defendant having received any Miranda warnings and that it was made prior to being asked any questions or interrogated in any manner and within a few minutes after he had been placed in custody." The trial court concluded that the statement was spontaneous and thus admissible.

The trial court's findings of fact after such a voir dire hearing are conclusive on appeal when supported by competent evidence in the record, even if the evidence is conflicting. *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983); *State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. denied*, 455 U.S. 1038 (1982).

The trial court's findings of fact are supported by competent evidence and the facts fully support the conclusion that the statement was spontaneous and admissible.

[3] Second, defendant argues that the trial court erred by not suppressing his statement, "I hit the man and knocked him down,

but Rasor beat him with the ax." Defendant asserts that this statement was involuntarily made.

On voir dire, the trial court found as fact that after being advised of his rights, defendant informed Officer Cole that he understood his rights. The trial court concluded that the statements made by the defendant to Cole were made "voluntarily, freely and understandingly, and that the defendant was in full understanding of his constitutional right to remain silent, his right to counsel, his right to have a parent or guardian present and all other constitutional rights."

Again, the trial court's findings of fact are supported by competent evidence and the facts support the conclusion that the statement was voluntarily made.

Third, defendant argues that "the trial judge erred by refusing to allow defense counsel to elicit relevant testimony from voir dire witnesses, and in refusing to allow him to obtain answers for the record." After reviewing the record, this argument also appears to be devoid of merit.

In his third assignment of error, defendant contends that he is entitled to a new trial because the trial judge admitted a statement into evidence against him, even though the evidence showed that the defendant had not previously waived his rights. This argument is likewise unconvincing.

As previously stated, the trial court found as fact that defendant informed Officer Cole that he understood his rights after being advised of them.

Even if the evidence is conflicting, the trial court's findings of fact are conclusive on appeal when supported by competent evidence. *Id.* There is competent evidence in the record which supports the finding that defendant was advised of his rights, understood his rights, waived his rights and voluntarily made the statements to the police officer. Defendant's contention is inapposite because it is not based on the facts as found by the trial court.

[4] In his fourth assignment of error, defendant contends that "after the trial judge erroneously admitted the defendant's statement, he compounded the error by continuing with a joint trial,

even though he was not able to delete from the statement references to the co-defendant without changing the meaning of the statement so that it prejudiced Roger Giles." We do not agree.

Defendant argues that the trial judge abused his discretion in ordering a joint trial where it was impossible for the State to comply with G.S. 15A-927(c)(1) and *Bruton v. United States*, 391 U.S. 123 (1968).

G.S. 15A-927(c)(1), which has been referred to as a codification of the *Bruton* rule, provides as follows:

> When a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court must require the prosecutor to select one of the following courses:
>
> a. A joint trial at which the statement is not admitted into evidence; or
>
> b. A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted so that the statement will not prejudice him; or
>
> c. A separate trial of the objecting defendant.

In this case, the statute was complied with in that defendant's statement was "sanitized" by deleting all references to Rasor before the statement was admitted into evidence. Defendant's original statement was:

> "Wait a minute," he [Giles] said, "I did hit the old man in the back of the head with the gun and knocked him down. He started to get back up and Rasor hit him two or three times with the ax." And I [Officer Cole] asked him "Why?" He [Giles] said, "Because he was going to call the law."

After deleting references to Rasor in accordance with G.S. 15A-927, the statement was presented to the jury as follows:

> He said that he had hit or slapped the old man in the back of the head with a gun and knocked him down. . . . I [Cole] asked him why. . . . The Defendant Giles stated, "Because he was going to call the law."

The deletions did not materially change the nature of defendant's statement. Defendant was not prejudiced by the admission of the "sanitized" statement.

Defendant further argues that the trial court erred in joining his case with Rasor's case for trial.

The propriety of joinder depends upon the circumstances of each case. Absent a showing that a defendant has been deprived of a fair trial by joinder, the trial judge's discretionary ruling on the question will not be disturbed upon appeal. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). In the present case no abuse of discretion has been shown, and there was no error in the consolidation of the cases for trial.

[5] In his fifth assignment of error, defendant contends that "the trial court erred in denying the defendant his right to confront witnesses against him when he introduced into evidence against defendant Giles a transcript of testimony of a deceased witness who had testified at the probable cause hearing in the case of co-defendant Rasor, where the defendant Giles had no opportunity to cross-examine the witness at the time the testimony was taken."

This contention lacks merit because the transcript offered into evidence was that of defendant's own juvenile transfer hearing, not Rasor's probable cause hearing. Since the witness died before trial, and because defendant had the opportunity to cross-examine the witness at the previous hearing, the prior testimony was properly admitted under G.S. 8C-1, Rule 804(b)(1).

We have reviewed defendant's remaining assignments of error and find them to be without merit.

No error.

Judges JOHNSON and EAGLES concur.