STATE OF NORTH CAROLINA v. JAMES EUGENE DEESE

No. 8710SC654

(Filed 15 March 1988)

Searches and Seizures § 11— drug raid in motel rooms—warrantless search of nearby car—probable cause

    Officers had a reasonable suspicion of criminal activity which justified their warrantless search of defendant's burgundy Cadillac where the Cadillac was parked near two motel rooms in which the officers had just conducted a drug raid and discovered cocaine, drug paraphernalia, a shotgun and an empty pistol case; a suspect told the officers that she and another individual rode from Charlotte with the cocaine supplier in a burgundy Cadillac; the occupants

of the Cadillac had been hugging and kissing and acting oblivious to armed officers who were running around the car shouting commands and orders; the driver of the Cadillac had a Charlotte address on his driver's license; and a handgun was seen protruding from under the front seat of the Cadillac.

APPEAL by defendant from *Barnette, Judge.* Judgment entered 27 April 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 10 December 1987.

Defendant was convicted of possession with intent to sell and deliver cocaine and sentenced to a term of five years imprisonment. At a voir dire hearing regarding defendant's motion to suppress certain evidence, the trial court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Defendant James Eugene Deese was the owner and operator of the 1979 burgundy Cadillac, N.C. license number HJP-659, searched by Raleigh Police Officers on April 5, 1985.

2. W. L. Baker, a Raleigh Police Officer of 14 years and a Detective in the Vice and Narcotics Division for 5 years, having previously purchased cocaine from a Mel Oldiges, arranged to purchase $14,000.00 worth of cocaine from Oldiges at the Comfort Inn in North Raleigh on April 5, 1985. Baker was told by Oldiges to go to Room 127, that his supplier would be there but unseen to take the money and that his supplier and the cocaine would be coming from Charlotte. Checking with the motel, Baker learned that the same person had rented both Room 125 and Room 127.

3. The above information (paragraph #2) was conveyed to Captain Lassiter, Lt. Brown, other Vice and Narcotics Detectives and members of the Selective Enforcement Unit, all of the Raleigh Police Department, including Detective Boykin and Officer Joyner.

4. Detective Baker went to Room 127 as directed by Oldiges, showing an envelope purported to contain $14,000.00 to pay for the cocaine. Oldiges showed Baker the 8 ounces of cocaine and Baker told Oldiges the envelope was a "dummy" package and that he would get the money out of the car. As

he opened the door to the parking lot, Baker gave the prear-ranged signal and SEU members and drug detectives carry-ing shotguns and rifles stormed rooms 125 and 127.

5. Mel Oldiges and the 8 ounces of cocaine were found in Room 127. Found in Room 125 were Thomas and Janet Kar-chon, a Mossberg .12 guage [sic] shotgun with case, a cocaine sifter and grinder, some plastic baggies, a wad of paper, an empty pistol case with weapon unaccounted for, and the key to Room 127. Not found were a pistol to match the case and a key to Room 125. Janet Karchon told police "we rode up from Charlotte with them in a burgundy Cadillac."

6. Captain Lassiter, after being informed of what had been found, what had not been found, and what Janet Kar-chon had said, approached a burgundy Cadillac parked two spaces down from Room 127, in front of Room 123. This car had been parked in front of Room 123 since before the "take down" of the "buy bust" in Rooms 125 and 127. The oc-cupants, James Eugene Deese, driver's seat, and Emilie Wolanda Kennedy, right front passenger seat, appeared to be "making out" or hugging and kissing and acted oblivious to the rifle and shotgun carrying SEU members and drug detec-tives who were running around their car, shouting commands to each other and ordering people to put their hands in the air. Captain Lassiter, aware of all of the above, asked to see Deese's drivers' [sic] license, saw that it had a Charlotte ad-dress, gave it back to him, and returned briefly to Room 125.

7. Captain Lassiter again approached the burgundy Cad-illac, directing SEU member, R. G. Joyner, to go around to the passenger side. As Joyner came around the front of the car, looking through the windshield, he could see a handgun under the front seat and announced "We've got a gun in the vehicle." Captain Lassiter asked Deese and Kennedy to step out of and to the back of the vehicle, which they did.

8. Officer Joyner went into the Cadillac to retrieve the handgun. While there he also saw another handgun concealed under the front seat and another handgun concealed in a gun case located on the console. He also secured these. While in the car he also observed a key to Room 125 on the floor on the driver's side in front of the front seat.

9. Both defendant Deese and defendant Kennedy were arrested, handcuffed, and transported to the Investigative Division of the Raleigh Police Department so that the evidence could be inventoried and secured, the booking slips could be filled out, and the warrants could be filled out. Defendant Deese was read his Miranda rights and stated that he did not wish to make a statement to police. After about one and a half to two hours the evidence was inventoried and secured, the paperwork was completed and all five defendants arrested were taken before the Wake County Magistrate. The defendants had been advised at the police station that they were being charged with conspiracy to traffic cocaine and that other charges would probably be brought.

10. After securing the weapons and arrest of the defendants the 1979 Cadillac was taken to the Raleigh Police Department where it was searched, its contents were inventoried, and items were seized from the passenger area of the vehicle.

11. Before the date set for probable cause hearing these cases were submitted to the Wake County Grand Jury. The Grand Jury continued the cases to a later session, but the Superior Court assumed and retained jurisdiction.

Based on the foregoing findings of fact, this Court makes the following

## CONCLUSIONS OF LAW

1. Defendant Deese has standing to object to the search of his 1979 Cadillac as he had a legitimate expectation of privacy in said vehicle.

2. Defendant Kennedy had no legitimate expectation of privacy in Deese's 1979 Cadillac and has no standing to contest the search.

3. At the time that Captain Lassiter first approached the 1979 Burgundy Cadillac containing these defendants, he had sufficient articulable facts to form a reasonable suspicion of criminal activity involving the defendants and the 1979 Cadillac.

4. Before defendants were asked to step out of the vehicle and Officer Joyner entered the vehicle, probable cause existed to believe that evidence relating to cocaine trafficking and conspiracy to traffick in cocaine would be found in the 1979 burgundy Cadillac.

5. Before defendants were asked to step out of the vehicle and Officer Joyner entered the vehicle, probable cause existed to believe that both defendants Deese and Kennedy had been involved in committing the felonies of cocaine trafficking and conspiracy to traffick in cocaine.

6. The search of the passenger area of the vehicle was also valid as being incident to arrest of the defendants.

7. There were no substantial violations of N.C.G.S. 15A in any arrest, processing or pretrial procedures involving these defendants.

Wherefore, it is hereby Ordered that both defendants' written and oral Motions to Suppress evidence seized in the search of the 1979 burgundy Cadillac be and are Denied and any such evidence shall be admissible at any trial of these defendants if otherwise admissible and relevant under the Rules of Evidence.

From the judgment of the trial court, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General J. Allen Jernigan, for the State.*

*Blanchard, Tucker, Twiggs and Abrams, by George E. Kelly, III, for defendant appellant.*

ARNOLD, Judge.

Defendant contends that the trial court erred in denying his motion to suppress evidence which was seized in the search of his 1979 burgundy Cadillac. We disagree.

When reviewing the denial of a defendant's motion to suppress evidence, the trial court's findings of fact are conclusive and binding if supported by competent evidence in the record. *State v. Giles*, 83 N.C. App. 487, 350 S.E. 2d 868 (1986), *disc. rev. denied*, 319 N.C. 460, 356 S.E. 2d 8 (1987). There is ample evidence in the

record before this Court to support the trial court's findings of fact in the case *sub judice*.

These findings of fact establish that as Officer Joyner and Captain Lassiter approached the burgundy Cadillac for the second time after the motel rooms were stormed, they had the following knowledge: 1) Eight ounces of cocaine had been found in Room 127; 2) a shotgun, a cocaine sifter and grinder, some plastic baggies, an empty pistol case and a key to Room 127 were found in Room 125; 3) a suspect told police that she and another individual rode from Charlotte with the supplier in a burgundy Cadillac; 4) the occupants of the vehicle had been "making out" or hugging and kissing in the burgundy Cadillac during the "take down" while armed police officers ran around the car shouting commands and orders; 5) the driver of the car had a Charlotte address on his driver's license and 6) a handgun was seen protruding from under the front seat of the car.

It has been held that when a weapon is the immediate object of a search, the safety of police officers justify allowing warrantless searches based only upon a reasonable suspicion of criminal activity. *State v. Alston*, 82 N.C. App. 372, 346 S.E. 2d 184, *disc. rev. allowed*, 318 N.C. 696, 350 S.E. 2d 858 (1986). The information possessed by the officers as they approached the car, at the very least, allowed the officers a reasonable suspicion of criminal activity. Defendant's contention is without merit.

Defendant further contends that the evidence should be excluded because it was obtained as a result of substantial violations of G.S. 15A. We disagree.

Evidence, if obtained as a consequence of a police officer's conduct in violation of G.S. 15A, must be suppressed. *State v. Richardson*, 295 N.C. 309, 245 S.E. 2d 754 (1978). Defendant presents several alleged violations of G.S. 15A. However, even assuming *arguendo* that there were substantial violations, defendant's contention is still without merit. All of the supposed violations occurred after the evidence in question already had been lawfully obtained. The trial court correctly denied defendant's motion to suppress.

No error.

Judges JOHNSON and ORR concur.