STATE OF NORTH CAROLINA v. AUDREY DENISE HILL, Defendant

No. COA06-683

(Filed 6 March 2007)

**Robbery— dangerous weapon—motor vehicle—acting in concert—continuous transaction**

> The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon, because: (1) it is well settled that a motor vehicle, when driven in such a manner as to endanger the life of another, may be considered a dangerous weapon; (2) the evidence was sufficient to show that defendant, together with a coparticipant pursuant to a common purpose, committed the crime of robbery with a dangerous weapon when the two entered a store, took merchandise without paying for it, were pursued by an employee into the parking lot, and the chase ended when defendant shoved the employee to the ground and her coparticipant attempted to run her over with an SUV; and (3) the evidence tended to show a continuous transaction where the use or threatened use of a dangerous weapon was joined in time and circumstances with the taking.

Appeal by defendant from a judgment entered 9 March 2006 by Judge John W. Smith in Rowan County Superior Court. Heard in the Court of Appeals 24 January 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Angel E. Gray, for the State.*

*William B. Gibson for defendant.*

STATE v. HILL

[182 N.C. App. 88 (2007)]

BRYANT, Judge.

Audrey Denise Hill (defendant) appeals from a judgment entered 9 March 2006 consistent with a jury verdict finding her guilty of robbery with a dangerous weapon and sentencing her to 103 to 133 months imprisonment.

The State's evidence tended to show the following: on 12 November 2004, Ms. Rose Wright was on duty as a manager at the Aldi's Food Store in Salisbury, North Carolina. At approximately 10:00 a.m. that morning, Ms. Wright was coming from the back of the store when she noticed defendant and another female leaving her store with a shopping cart full of merchandise. Ms. Wright followed the women out into the parking lot to a blue sport utility vehicle (SUV) which was backed into the sidewalk adjacent to the store. When Ms. Wright approached the SUV, she noticed defendant seated in the driver's seat and the other woman, Melanie Leach, loading items from the shopping cart, including video games, toys, and a computer monitor, into the back of the SUV. Ms. Wright asked Ms. Leach if she had a receipt for the items in the shopping cart. Ms. Leach replied that the receipt was in her purse. Ms. Wright followed Ms. Leach to the passenger side of the vehicle. As Ms. Leach was searching through her purse, Ms. Wright became suspicious and walked to the rear of the SUV to take down the license number. When she got to the rear of the SUV, Ms. Wright discovered that a newspaper was concealing the license tag. As she removed the newspaper, defendant got out of the SUV and came around to the rear of the SUV to confront Ms. Wright. Defendant told Ms. Wright to "leave my f—ing license plate alone," and attempted to cover up the license tag with another newspaper. While Ms. Wright and defendant were engaged in a verbal confrontation at the rear of the SUV, Ms. Leach slid into the driver's seat and took off. Ms. Wright and defendant ran after the SUV. Ms. Leach circled around in the Aldi's parking lot in the SUV and headed back towards Ms. Wright and defendant. Defendant shoved Ms. Wright to the ground. Ms. Leach swerved the SUV within four to six inches of Ms. Wright who remained on the ground. Defendant ran after the SUV and jumped in the back and the SUV left the parking lot headed toward Granite Quarry.

Another customer, Mr. Ernest Smith, had been sitting in his car in the Aldi's parking lot during the entire episode. After seeing defendant shove Ms. Wright to the ground, he ran over to see if she was all right and waited for the police to arrive. Mr. Smith reported to Officer Lanier of the Salisbury Police Department that he had seen defendant

**STATE v. HILL**

[182 N.C. App. 88 (2007)]

and Ms. Leach exit the Aldi's store with a shopping cart full of merchandise. He watched the women throw the merchandise into a blue SUV. He witnessed the verbal confrontation between Ms. Wright and defendant, then he saw the SUV circle around the parking lot. He saw defendant shove Ms. Wright to the ground and the SUV swerve towards Ms. Wright. Mr. Smith, "thought she was going to try to hit her." Defendant jumped in the back of the SUV and it "took off []out of the parking lot."

Ms. Wright recorded the license number on one of the newspapers defendant had used to cover the tag and gave it to a police officer who responded to the scene. Officer Lanier ran the license tag number recorded by Ms. Wright. The license tag number came back as being registered to a 1996 Ford Explorer owned by defendant. Defendant was taken into custody by the Salisbury Police Department on 19 November 2005. After being advised of her *Miranda* rights, defendant voluntarily gave a written statement to Officer Lanier. In describing her attempts to get into the SUV after pushing Ms. Wright to the ground she noted, "I ran to the vehicle to get in, but Melanie had the doors locked, so she drove around the bank parking lot and circled around and that's when I jumped in." Defendant continued by stating, "so I jumped in and as we sped off some of the merchandise hit the ground . . . we headed down toward Granite Quarry and went the back way." Defendant admitted that Ms. Leach "tried to run over the lady or run the lady over," in the Aldi's parking lot.

On 3 January 2005, defendant was indicted by the Rowan County Grand Jury for the crime of robbery with a dangerous weapon. The case was called for trial during the 6 March 2006 Criminal Session of the Superior Court of Rowan County. On 8 March 2006, a jury convicted defendant of robbery with a dangerous weapon. On 9 March 2006, Judge John W. Smith entered judgment and sentenced defendant to 103 to 133 months imprisonment. Defendant appeals.

Defendant appeals whether the trial court erred by denying her motion to dismiss the robbery with a dangerous weapon charge based on insufficiency of the evidence. Defendant argues there was insufficient evidence: (1) of the use of a dangerous weapon to endanger the life of another, (2) that defendant acted in concert with Ms. Leach who was driving the SUV, and (3) that the use of a dangerous weapon was so joined in time to the taking of the property as to be part of one continuous transaction. For the following reasons,

we disagree with defendant's contentions and find defendant received a trial free from error.

In reviewing the denial of a defendant's motion to dismiss, the Court determines only "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Owen*, 159 N.C. App. 204, 206, 582 S.E.2d 689, 690 (2003) (quotation omitted). The Court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference therefrom. *State v. Weathers*, 339 N.C. 441, 451 S.E.2d 266 (1994). A defendant's motion to dismiss "is properly denied if the evidence, when viewed in the above light, is such that a rational trier of fact could find beyond a reasonable doubt the existence of each element of the crime charged." *State v. Worsley*, 336 N.C. 268, 274, 443 S.E.2d 68, 70 (1994). Evidence of the defendant which is favorable to the State is considered, but his evidence in conflict with that of the State is not considered upon such motion. *State v. Greene*, 278 N.C. 649, 180 S.E.2d 789 (1971). It is then for the jury to decide whether the facts satisfy them beyond a reasonable doubt that defendant is actually guilty and the court must overrule the motion to dismiss. *State v. Styles*, 93 N.C. App. 596, 379 S.E.2d 255 (1989). The elements of the crime of robbery with a dangerous weapon are: (1) the unlawful taking or attempted taking of personal property from another, (2) the possession, use or threatened use of a firearm or other dangerous weapon, and (3) danger or threat to the life of the victim. N.C. Gen. Stat. § 14-87(a) (2005); *State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978).

First, defendant argues that she could not be guilty of robbery with a dangerous weapon because the evidence was insufficient to prove that "Melanie Leach had a dangerous weapon in her possession at the time she obtained the property." For a conviction of the crime of robbery with a dangerous weapon, the perpetrator, or his accomplice, must possess, use or threaten the use of a firearm or other dangerous weapon to endanger the life of the victim. *State v. Evans*, 279 N.C. 447, 452, 183 S.E.2d 540, 544 (1971). The weapon utilized does not have to be a firearm to be a life threatening weapon. *State v. Funderburk*, 60 N.C. App. 777, 299 S.E.2d 822, *disc. review denied*, 307 N.C. 699, 301 S.E.2d 392 (1983). In determining whether evidence of the use of a particular instrument constitutes evidence of use of "any firearms or other dangerous weapon, implement or means" within N.C.G.S. § 14-87, the determinative question is "whether the evidence was sufficient to support a jury finding that a person's life

was in fact endangered or threatened [by the use of that instrument]." *State v. Alston*, 305 N.C. 647, 650, 290 S.E.2d 614, 616 (1982) (citation omitted). "Whether an instrument can be considered a dangerous weapon depends upon the nature of the instrument, the manner in which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use." *State v. Peacock*, 313 N.C. 554, 563, 330 S.E.2d 190, 196 (1985). It is well settled that a motor vehicle, when driven in such a manner as to endanger the life of another, may be considered to be a dangerous weapon. *State v. Eason*, 242 N.C. 59, 86 S.E.2d 774 (1955); *see also Joyner*, 295 N.C. at 64, 243 S.E.2d at 373 ("An instrument which is likely to produce death or great bodily harm under the circumstances of its use is properly denominated a deadly weapon.") and *State v. Spellman*, 167 N.C. App. 374, 605 S.E.2d 696 (2004) (citations omitted) (where defendant drove truck recklessly with disregard for the victim's safety evidence sufficient to allow a jury to reasonably infer that defendant "could have foreseen that death or bodily injury would be the probable result of his actions.").

In the case *sub judice*, Ms. Leach drove a blue Ford Explorer owned by defendant towards Ms. Wright in an attempt to, in defendant's own words, "run the lady over." Mr. Smith, the customer parked in the Aldi's parking lot, testified that he saw defendant shove Ms. Wright to the ground. He then witnessed the SUV, driven by Ms. Leach, swerve toward Ms. Wright as she was coming back to pick up the defendant. Mr. Smith further testified that he thought the SUV was going to hit Ms. Wright. Ms. Leach drove defendant's SUV in such a manner as to endanger the life of Ms. Wright. *Joyner* at 63, 243 S.E.2d at 373 ("[W]hether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon [is the question], not whether the victim was scared or in fear of his life."). The State has presented sufficient evidence of this element of the crime.

Defendant next argues she did not take the items from the Aldi's store and the State did not produce sufficient evidence that she acted in concert with Ms. Leach. If two or more persons join in a purpose to commit robbery with a dangerous weapon, each of them, if actually or constructively present, is guilty of that crime if the other commits the crime, if they shared a common plan to commit that offense. *State v. Johnson*, 164 N.C. App. 1, 12, 595 S.E.2d 176, 182 (2004).

In this case, the jury was instructed on the theory of acting in concert. Under the theory of acting in concert, if two or more persons

join in a purpose to commit a crime, each person is responsible for all unlawful acts committed by the other persons as long as those acts are committed in furtherance of the crime's common purpose. *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991). Therefore, the State need not present evidence that defendant actually possessed the dangerous weapon. The State must only show that defendant "acted in concert to commit robbery and that his co-defendant used the dangerous weapon in pursuance of that common purpose to commit robbery." *Johnson*, 164 N.C. App. at 13, 595 S.E.2d at 183. "The theory of acting in concert does not require an express agreement between the parties. All that is necessary is an implied mutual understanding or agreement to do the crimes." *State v. Giles*, 83 N.C. App. 487, 350 S.E.2d 868 (1986), *cert. denied*, 319 N.C. 460, 356 S.E.2d 8 (1987).

Defendant and Ms. Leach drove to the Aldi's store in defendant's Ford Explorer. Defendant placed a newspaper over her license plate and backed into a parking spot next to the store. Defendant and Ms. Leach entered the store together and exited with a shopping cart full of merchandise. While Ms. Leach was loading the merchandise into the Explorer, defendant sat in the driver's seat. When confronted by Ms. Wright, defendant got out of the SUV and attempted to obscure Ms. Wright's view of her license plate. Defendant shoved Ms. Wright to the ground and jumped into the SUV when Ms. Leach circled around the parking lot. Taken in the light most favorable to the State, the evidence is sufficient to show that defendant, together with Ms. Leach pursuant to a common purpose, committed the crime of robbery with a dangerous weapon.

"[T]he temporal order of the threat or use of a dangerous weapon and the taking is immaterial." *State v. Cunningham*, 97 N.C. App. 631, 634, 389 S.E.2d 286, 288, *disc. review denied*, 326 N.C. 802, 393 S.E.2d 905 (1990). However, there must be a "continuous transaction in which the threat or use of the dangerous weapon and the taking are so joined in time and circumstance as to be inseparable." *State v. Barnes*, 125 N.C. App. 75, 78, 479 S.E.2d 236, 238, *aff'd*, 347 N.C. 350, 492 S.E.2d 355 (1997) (citation and quotation omitted). For purposes of robbery with a dangerous weapon, the "taking is not over until after the thief succeeds in removing the stolen property from the victim's possession." *State v. Sumpter*, 318 N.C. 102, 111, 347 S.E.2d 396, 401 (1986). "Property is in the legal possession of a person if it is under the protection of that person." *State v. Bellamy*, 159 N.C. App. 143, 149, 582 S.E.2d 663, 668 (2003). "Thus, just because a thief has

physically taken an item does not mean that its rightful owner no longer has possession of it." *Id.* at 149, 582 S.E.2d at 668.

The facts in *State v. Bellamy* and *State v. Barnes* are particularly similar to those in this case. In *State v. Bellamy,* this Court held that the defendant's motion to dismiss was correctly denied when the State produced evidence that: (1) the defendant ran out of a video store with two videos he had not paid for; (2) two store employees chased the defendant from the store to the end of the parking lot; and (3) the chase ended when the defendant waived a pocket knife at the employees and said, "you want a piece of this." *Bellamy,* 159 N.C. App. 143, 582 S.E.2d 663. In *State v. Barnes,* this Court held that the defendant's motion to dismiss was correctly denied when the State produced evidence that: (1) the defendant and his accomplice ran out of a Winn-Dixie with ten bottles of Advil and two bottles of Tylenol; (2) Winn-Dixie employees pursued the defendant and his accomplice outside to a car parked on the curb; (3) the employees attempted to retrieve the merchandise from the defendant seated in the car; (4) the defendant cut the employee's arm with a knife and threatened him with a gun; (5) the employee backed away and the defendants drove off in the car. *State v. Barnes,* 125 N.C. App. 75, 479 S.E.2d 236 (1997).

In the case *sub judice,* defendant and her accomplice Ms. Leach: (1) entered the Aldi's store; (2) took merchandise without paying for it; (3) were pursued by an Aldi's employee, Ms. Wright, into the parking lot; (4) where the chase ended when defendant shoved Ms. Wright to the ground and Ms. Leach attempted to run over her with the SUV. The assault with the SUV on Ms. Wright after being pushed to the ground by defendant was made in an attempt to end Ms. Wright's pursuit of the merchandise taken from the Aldi's store. Even though Ms. Leach was circling in the SUV, she never left the premises of the common parking lot between the Aldi's store and the adjacent bank. This evidence tended to show one continuous transaction where the use or threatened use of a dangerous weapon was so joined in time and circumstances with the taking as to be inseparable. *State v. Hope,* 317 N.C. 302, 306, 345 S.E.2d 361, 364 (1986). Therefore, the State presented sufficient evidence to permit a rational trier of fact to find beyond a reasonable doubt that the defendant in this case committed the offense of robbery with a dangerous weapon.

No error.

Judges McGEE and ELMORE concur.