STATE OF NORTH CAROLINA
v.
RIGO JIMENEZ and JOSE PINEDA, Defendants.
No. COA07-400
North Carolina Court of Appeals
Filed September 2, 2008
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorneys General Gayl M. Manthei and Gerald K. Robbins, for the State.
Jon W. Myers for defendant-appellant Jimenez.
J. Clark Fischer for defendant-appellant Pineda.
GEER, Judge.
Defendants Rigo Jimenez and Jose Pineda appeal from their convictions of robbery with a dangerous weapon and discharging a weapon into occupied property. Defendants primarily argue that the trial court erred in denying their motions to dismiss the charge of robbery with a dangerous weapon. While defendant Pineda admits that he took beer from a convenience store without paying for it, he contends that he did not himself use a firearm, and any robbery was complete by the time defendant Jimenez brandished his shotgun. On the other hand, Jimenez admits pulling out a shotgun, but denies any agreement with defendant Pineda to rob the store. Based on our review of the evidence, we hold that the State presented sufficient evidence that the two men were acting in concert and that use of the shotgun was necessary for defendant Pineda to succeed in removing the beer from the store. The trial court, therefore, properly denied the motions to dismiss.

Facts
When the evidence is viewed in the light most favorable to the State, it tends to show the following facts. At approximately 7:00 p.m. on 30 March 2006, defendants Pineda and Jimenez met at the house of Pineda's sister so that they could drive to Asheville to visit Jimenez's girlfriend. They rode in a dark red Ford LTD with Pineda driving, while Jimenez sat in the front passenger seat assembling and loading a shotgun.
After visiting Jimenez's girlfriend, where the two men drank an 18-pack of beer, defendants picked up Alejandro Enriquez and Guadalupe Barbosa. The four men went to buy beer at the Energy Mart convenience store. Pineda walked into the Energy Mart at approximately 2:40 a.m. As he headed toward the beer cooler, the store clerk, Edwin Patterson, explained that he was not allowed to sell beer after 2:00 a.m. Pineda grabbed a case of beer and ran out of the store with Patterson pursuing him. When Patterson stepped out of the store, he saw a man less than 10 feet away holding a gun. Another customer, Steve Mintz, saw the gunman, later identified as Jimenez, point the gun first towards the sky and then at Patterson. Patterson ran back inside the store to callthe police. Mintz watched as Pineda and Jimenez got into the red Ford LTD, left the parking lot, and drove towards Interstate 64.
Also in the early morning hours of 31 March 2006, Whitney and Brandon Smith were traveling on an interstate to visit their family in Tennessee. The Smiths noticed a red car driving erratically and rapidly approaching their vehicle. The car pulled up beside the Smiths and one of the occupants, later identified as Jimenez, pointed a shotgun at the Smiths' car. Defendants' car then dropped behind the Smiths, began flashing its lights, sped up and passed the Smiths, and then slowed down again. When defendants again pulled beside the Smiths' car, Jimenez fired his shotgun out of the driver's side window into the forward part of the passenger's side door of the Smiths' car, leaving a baseball-sized hole in the car body.
The Smiths accelerated to escape defendants. Due to road construction, every car on the interstate was required to use the next exit. As the Smiths exited the highway, they saw a police cruiser parked directly off the exit. The Smiths pulled up beside the deputy sheriff and told her what happened. As they were describing the incident, the Smiths saw defendants' car coming off the exit ramp and pointed it out to the deputy as the car involved in the shooting.
The deputy started to follow the car and called for support. While the deputy was pursuing defendants, she learned that there was a BOLO (be on the look-out for) on the car for an armed robbery. Officers forced defendants to stop and ordered each occupant out of the car. When the four men were secured, Patterson was brought to the scene, and the officers conducted a show-up. Patterson identified Pineda as the one who stole the beer and Jimenez as the one who pointed the gun at him. During a search of the car, a red 1991 Ford registered to Pineda, officers found a case of cold beer with an Energy Mart price sticker, a disassembled shotgun, multiple empty beer cans, a spent shell casing from the shotgun, and additional shotgun shells scattered throughout the vehicle.
On 30 May 2006, defendants were indicted for robbery with a dangerous weapon and discharging a dangerous weapon into occupied property. At trial, both defendants testified.
Jimenez testified that he saw Pineda go to the beer cooler in the Energy Mart, pick up the beer, and leave with a man running after him. Jimenez claimed he did not realize the man was the store clerk, but instead thought the man was trying to fight Pineda. He testified that he never pointed the gun at Patterson, but rather held the gun straight up in the air and asked Patterson why he wanted to fight. According to Jimenez, there had been no discussion about shoplifting beer, and he did not realize, at that point, that Pineda had shoplifted the beer. With respect to the incident on the highway, Jimenez testified that there was a car that was trying to race them, and everyone in Pineda's car began to get aggravated. Pineda asked Jimenez to give him a beer, and as Jimenez bent down to get the beer, Jimenez heard a loud pop. Jimenez testified that he did not fire the shot at the Smiths' car and does not know who did.
Pineda testified that he never discussed stealing beer with anyone in his car. He admitted that after Patterson told him that he could not buy the beer, he walked out of the store with the beer. When Patterson ran after him and stood in front of the car, Pineda did not ask anyone to help him. Pineda testified that he saw Jimenez get out of the car and point his gun towards the sky, but that the gun was never pointed at Patterson. According to Pineda, while they were driving on the interstate, Jimenez began yelling at Pineda to go after the Smiths and was threatening to shoot the Smiths' car. Pineda testified that he flashed his lights to signal the Smiths to drive away from defendants, but Jimenez leaned over Pineda and, aiming out the driver's side window, fired the shot that hit the Smiths' car.
On 8 September 2006, a jury found defendants guilty of robbery with a dangerous weapon and discharging a dangerous weapon into occupied property. The trial court sentenced each defendant to two consecutive sentences of 64 to 86 months imprisonment. Defendants timely appealed to this Court.

I
Jimenez contends that the trial court erred by allowing joinder of the charges of robbery with a dangerous weapon and discharging a weapon into occupied property. Pursuant to N.C. Gen. Stat. § 15A-926(a) (2007), "[t]wo or more offenses may be joined in one pleading or for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." This Court has held that this statute requires a two-step analysis:
First, the two offenses must have some sort of transactional connection. Whether such a connection exists is a question of law, fully reviewable on appeal. If such a connection exists, consideration then must be given as to whether the accused can receive a fair hearing on more than one charge at the same trial, i.e., whether consolidation hinders or deprives the accused of his ability to present his defense. This second part is addressed to the sound discretion of the trial judge and is not reviewable on appeal absent a manifest abuse of that discretion.
State v. Montford, 137 N.C. App. 495, 498, 529 S.E.2d 247, 250 (internal citations and quotation marks omitted), cert. denied, 353 N.C. 275, 546 S.E.2d 386 (2000).
Jimenez contends that this case fails the first test as no "transactional connection" existed between the robbery and the shooting because the two offenses are very different in nature, each one took place at a different location, and each involved different victims. N.C. Gen. Stat. § 15A-926(a), however, specifically permits joinder when offenses are based on "a series of acts or transactions connected together." The evidence at trial supported a theory that the two men drove to Asheville while Jimenez assembled his shotgun; they got drunk and went to get more beer, with Jimenez brandishing his shotgun at the store after Pineda stole the beer; and then, while drinking the stolen beer, they drove down the highway terrorizing another driver. We hold that the two offenses were part of "a series of acts or transactions connected together" within the meaning of N.C. Gen. Stat. § 15A-926(a). See State v. Floyd, 148 N.C. App. 290, 293, 558 S.E.2d 237, 239 (2002) (holding that multiple offenses within a month amounted to a "crime spree" warranting joinder); State v. Byrd, 50 N.C. App. 736, 739-40, 275 S.E.2d 522, 525 ("We hold that defendant, who was fleeing from the scene of one of the other crimes with which he was charged and who assaulted an officer attempting to apprehend, detain, or arrest him while in such flight, was engaged in a series of acts or transactions connected together within the meaning of G.S. 15A-926(a)."), disc. review denied, 303 N.C. 316, 281 S.E.2d 654 (1981).
With respect to the prejudice prong of the joinder test, Jimenez's only specific argument is that, in the absence of joinder, evidence of each offense would not have been admissible in the trial of the other offense under Rule 404(b) of the Rules of Evidence. We disagree. Here, evidence from the witnesses at the Energy Mart that Jimenez was brandishing the gun would have been admissible in a trial on the shooting offense as tending to prove that Jimenez was the shooter minutes later when the Smiths' car was struck. On the other hand, evidence that defendants' car  a short time after the robbery  contained cold beer with an Energy Mart price sticker, a disassembled shotgun, and shotgun shells was relevant in the robbery trial as identifying defendants as the perpetrators of the robbery of the Energy Mart. See State v. Corbett, 309 N.C. 382, 388, 307 S.E.2d 139, 144 (1983) ("Although, generally, evidence of crimes other than the one charged is inadmissible to show the character of the accused or his disposition to commit an offense of the nature of the one charged, such evidence is admissible if it is relevant to show the identity of the perpetrator of the crime charged."). The trial court, therefore, did not abuse its discretion in joining the two offenses for trial.

II
Defendants Pineda and Jimenez both assert that the trial court erred in denying their motions to dismiss the charge of robbery with a dangerous weapon. When considering a motion to dismiss, the trial court must determine whether the State presented substantial evidence of each element of the crime and of the defendant's being the perpetrator. State v. Robinson, 355 N.C. 320, 336, 561 S.E.2d 245, 255, cert. denied, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" State v. Matias, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). The evidence must be viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert denied, 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995). The requisite elements of armed robbery are: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened." State v. Willis, 127 N.C. App. 549, 551, 492 S.E.2d 43, 44 (1997). Pineda and Jimenez each present a slightly different argument as to why his motion to dismiss should have been allowed.
Pineda challenges the evidence of the second element requiring use or threatened use of a firearm. He argues that the robbery was complete by the time Jimenez brandished the shotgun and, therefore, the State failed to prove that the beer was taken by use of a firearm. This Court rejected a similar contention in State v. Barnes, 125 N.C. App. 75, 479 S.E.2d 236, aff'd per curiam, 347 N.C. 350, 492 S.E.2d 355 (1997).
In Barnes, the defendants conceded that they entered the victim's store, obtained merchandise, left the store without paying for the merchandise, and one of the defendants displayed a handgun during a confrontation with store personnel outside of the store. Id. at 78, 479 S.E.2d at 238. The defendants argued, however, "that the armed robbery was complete when defendants exited the store with the merchandise." Id.
In rejecting this argument, this Court explained: "Such an argument blurs the distinction between larceny and robbery." Id. The Court explained that "[i]n [State v. Barnes, 345 N.C. 146, 149-50, 478 S.E.2d 188, 191 (1996)], our Supreme Court emphasized: `Forpurposes of larceny the element of taking is complete in the sense of being satisfied at the moment a thief first exercises dominion over the property. . . . For purposes of robbery the taking is not over until after the thief succeeds in removing the stolen property from the victim's possession.'" Id. at 78-79, 479 S.E.2d at 238. This Court then explained, in holding that the trial court properly denied the motion to dismiss:
Here, defendant's purpose in brandishing the weapon was to thwart the efforts of store personnel, as they attempted to retain lawful possession of the store merchandise. Defendant Hooks' display of a handgun was thus necessary to the completion of the taking, viz., defendant applied force when it became apparent the success of the taking required it. Accordingly, defendant Hooks' attempt to take the property from the store by force was inseparable from the rest of the transaction.
Id. at 79, 479 S.E.2d at 238-39.
Barnes is materially indistinguishable from this case. After Pineda took the beer from the store without paying, he was pursued by Patterson, the store clerk who was attempting to retain possession of the beer. Jimenez then threatened Patterson with the gun, permitting Pineda to load the beer into the car and the men to drive off. Accordingly, the use of the gun was inseparable from Pineda's taking of the beer, and the trial court properly denied the motion to dismiss. See also State v. Bellamy, 159 N.C. App. 143, 149, 582 S.E.2d 663, 668 (holding trial court properly denied motion to dismiss when defendant ran out of store with stolen videotapes, a clerk chased him, and defendant threatened clerk with knife to thwart clerk's attempt to regain possession of videotapes), cert. denied, 357 N.C. 579, 589 S.E.2d 130 (2003).
Both Pineda and Jimenez argue that there was insufficient evidence that they were acting in concert. "'If two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence there of.'" State v. Mann, 355 N.C. 294, 306, 560 S.E.2d 776, 784 (quoting State v. Erlewine, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991)), cert. denied, 537 U.S. 1005, 154 L. Ed. 2d 403, 123 S. Ct. 495 (2002). Pineda contends that the State failed to prove that Jimenez used his shotgun as part of a common plan or scheme with Pineda, while Jimenez argues that there was no evidence that he and Pineda planned to commit robbery.
With respect to Pineda's argument, it is immaterial whether he intended for Jimenez to use a gun in the robbery. As this Court stated in State v. Johnson, 164 N.C. App. 1, 12-13, 595 S.E.2d 176, 183, appeal dismissed and disc. review denied, 359 N.C. 194, 607 S.E.2d 658, 659 (2004), the jury "need not find that defendant had intent to use a dangerous weapon in order to be convicted of robbery with a dangerous weapon. Instead, they need only find that defendant acted in concert to commit robbery and that his co-defendant used the dangerous weapon in pursuance of that common purpose to commit robbery." The critical question with respect to both Pineda and Jimenez is, therefore, whether the State presented sufficient evidence that the two men had a common purpose to commit robbery. While Jimenez points to the lack of evidence of any discussion prior to the robbery, "'[t]he theory of acting in concert does not require an express agreement between the parties.'" State v. Hill, 182 N.C. App. 88, 93, 641 S.E.2d 380, 385 (2007) (quoting State v. Giles, 83 N.C. App. 487, 490, 350 S.E.2d 868, 870 (1986), appeal dismissed and disc. review denied, 319 N.C. 460, 356 S.E.2d 8 (1987)). It is sufficient if there is an implied mutual understanding to commit the crime. Id.
The State presented evidence that Pineda drove the car, while Jimenez sat in the front passenger seat assembling and loading his shotgun. Subsequently, the two men  with two other men  decided to get more beer and drove together to a convenience store. Jimenez watched while Pineda walked into the store, picked up a case of beer, and walked out of the store with the store clerk running after him. As soon as the clerk stepped out the store, the clerk saw Jimenez standing within 10 feet of the door, threatening the clerk with his shotgun. As Jimenez stood there with his gun aimed at the clerk, Pineda put the beer in the car, and they then drove off. While the jury was not required to find that defendants were acting in concert, when this evidence is viewed in the light most favorable to the State, it was sufficient to permit the jury to conclude that there was an implied mutual understanding to commit robbery. See id. (holding evidence sufficient to show that defendant acted pursuant to common purpose to commit robbery when defendant and another woman drove to a store, defendant obscured her license plate, the two exited store with merchandise, the other woman loaded the car while defendant sat in driver's seat, defendant shoved store's manager to ground when she tried to stop them, and two women drove off). The trial court, therefore, did not err in denying the motions to dismiss.

III
Defendants Pineda and Jimenez next both contend that the trial court erroneously admitted evidence of their gang affiliation. Officer Brandon McGaha, the officer who responded to the call regarding the robbery, testified as follows:
A. . . . . Mr. Pineda he had his eyebrows were [sic] shaved in a certain manner consistent with a local gang called MS 13.
Q. And what do you mean by the eyebrows were shaved in a manner, could you describe that?
A. I can. They shave their eyebrows with one stripe on one, actually shave a stripe in, just one on one side, then three on the other, so that's significant of 13. That's also in the booking picture, can be seen in the booking picture.
Neither defendant objected to Officer McGaha's testimony.
Next, Officer Julie Turner, who was responsible for booking defendants, testified:
Q. What did you observe about Jose Pineda?
A. Jose Pineda had numerous tattoos, and had some shaved marks on his eyebrows.
Q. Did he tell you anything about that?
A. The  two of the subjects had the shave marks on the eyebrows that were very distinct. And I asked what's up with the eyebrows, and it was [Jimenez] told me that it meant 31, there was a gang in the area, area of Hendersonville, Asheville and Greenville, South Carolina.
. . . .
Q. Did [Jimenez] give you other information about himself?
A. Yes, he had told me that he was involved in the gang he was speaking of.
Jimenez's counsel ultimately objected and made a motion to suppress Officer Turner's testimony, arguing that the evidence was inflammatory and in violation of Miranda. Pineda's counsel joined that objection. After allowing voir dire, the trial court overruled defendants' objections and denied the motion to suppress on the grounds that the questions by Officer Turner constituted routine booking questions.
Even assuming arguendo that the issue was properly preserved[1] and that the trial court erred, defendants have failed to demonstrate prejudice as the evidence in this case of defendants' guilt was overwhelming. See State v. Gayton, 185 N.C. App. 122, 126, 648 S.E.2d 275, 278 (2007) (holding that although admission of evidence that defendant was gang member was irrelevant to defendant's guilt or innocence, there was no prejudicial error due to the overwhelming evidence against defendant). It is undisputed that Jimenez assembled and loaded a shotgun while defendants drove to Asheville, that Pineda took beer from the Energy Mart without paying for it, and Jimenez threatened the store clerk with the shotgun. It is also undisputed that while defendants were driving erratically on the interstate, passing and re-passing the Smiths, someone in defendants' car fired the shotgun into the Smiths' car. Pineda and one of the other occupants of the car, Barbosa, testified that it was Jimenez who shot at the Smiths. In addition, officers found a spent shell and cold Energy Mart beer in the car with defendants. Given the evidence, including defendants' own testimony, we conclude there was no reasonable possibility that the jury would have reached a different verdict had the information about gangs been excluded.
No error.
Judges WYNN and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] See State v. Williams, 279 N.C. 515, 524, 184 S.E.2d 282, 288 (1971) ("The well settled general rule is that objections, interposed after the witness has testified, come too late to form the basis for the award of a new trial.").