BERGER, Judge.
 

 *315
 
 Kevin Darnell Guy ("Defendant") appeals from his convictions for robbery with a dangerous weapon, possession of stolen goods, and simple possession of marijuana. Defendant asserts that (1) his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution was violated; (2) the trial court erred in denying his motions to dismiss; (3) the trial court failed to intervene
 
 ex mero motu
 
 when the prosecutor made references to Defendant's gang affiliation during closing arguments; (4) the trial court erred in instructing the jury on acting in concert; and (5) his constitutional protection from double jeopardy was violated when the trial court sentenced him for both robbery with a dangerous weapon and possession of stolen goods. We review each argument in turn.
 

 Factual and Procedural Background
 

 On November 3, 2015, Joseph Ray ("Ray"), now deceased, went to an ATM to withdraw money, but was unsuccessful because his disability check had not yet been deposited. Upon returning around 1:20 a.m. to his home in Colonial Mobile Home Park in Butner, North Carolina, he was robbed of his debit card at gunpoint.
 

 His mother, Shirley P. Spalding ("Spalding"), testified that Ray entered the home "pale as a ghost" and "shaking real bad." He was "stuttering his words," but was able to say "I got robbed." He further relayed to her that a man had put a gun to his head while another individual wearing a clown mask was standing in front of him. After Ray told the individuals that he had no cash but had his debit card, they took his debit card and fled the scene in a car.
 

 Ernest Pipkin ("Pipkin") was inside Ray's home at the time of the robbery. Pipkin testified that, as he walked out of the mobile home, he saw "a car fly by" and "jump the hump" of a large speed bump on the road that ran through the mobile home park. Pipkin testified that he thought one of the tires on the car "caught a flat" because he heard a loud "pow" when the car hit the speed bump.
 

 Butner Public Safety Officer Kevin Rigsby ("Officer Rigsby") was on patrol that night with three other officers when they received a report from 911 communications that an armed robbery had just taken place and that the suspects had not been apprehended. When Officer Rigsby
 
 *316
 
 arrived at Ray's home, Ray was "very shaken up, he was fumbling over his words and talking so fast, it sounded like he was speaking another language." Officer Rigsby further testified that:
 

 [Ray] said that a silver -- It was four black subjects, four black males is what he thought robbed him and one of them had a short snubnosed revolver to the back of his
 
 *71
 
 head ... [and] [a]t that time the only information he provided was that a silver car fled toward East C Street, and that he wasn't sure if all three subjects got into the vehicle or not. The only clothing description he gave me was that one of the subjects that he saw run around the 90 degree turn in the mobile home park back toward the get away car was wearing red. He couldn't tell me whether it was a red hat, red pants, he just said red.
 

 As Officer Rigsby was speaking with Ray, he heard on his radio that Officer Cecilia Duke ("Officer Duke") had located a vehicle and suspects, which matched the description provided by the Sheriff's Department, less than a quarter-mile away from Ray's residence.
 

 Officer Rigsby immediately left Ray to assist Officer Duke. He considered the ongoing search an "emergency situation" because "[i]t was known that the robbery included handguns and [O]fficer Duke was by herself with three to four possible subjects." When Officer Rigsby arrived at Piedmont Village, he saw Defendant changing a tire on the vehicle; a suspect wearing a red ball cap, a gray t-shirt, red pants and red shoes; and a female suspect. Officer Rigsby also observed a black mask in the open trunk of the silver car which was similar to the mask described by Ray. Defendant admitted that the silver car was his. Once the suspects had been detained, Officer Rigsby canvassed the area and found a loaded snubnosed revolver fifteen to twenty feet away from Defendant's car. Officer Duke also found Ray's stolen debit card and a bag of marijuana near the handgun.
 

 On December 7, 2015, Defendant was indicted for possession of a firearm by a felon; robbery with a dangerous weapon; possession of stolen goods; possession with intent to manufacture, sell, or deliver marijuana; keeping or maintaining a vehicle for the keeping or sale of marijuana; and possession of a stolen firearm. On August 16, 2017, Defendant filed a motion to suppress statements made by the victim shortly after the alleged robbery. Before his trial began, Defendant's motion to suppress was denied and the charges of possession of a firearm by a felon and possession of a stolen firearm were dismissed.
 

 *317
 
 On August 23, 2017, Defendant was convicted of robbery with a dangerous weapon, possession of stolen goods, and possession of marijuana. Defendant was found not guilty of maintaining or keeping a vehicle for the keeping or selling of marijuana. He was sentenced to a term of 96 to 128 months in prison for his conviction of robbery with a dangerous weapon and concurrent terms of sixty days for possession of stolen goods and possession of marijuana.
 

 Defendant gave notice of appeal on August 24, 2017. On September 6, 2017, Defendant filed a pro se notarized, handwritten "Motion for Appeal" with the Granville County Superior Court, but failed to serve his motion on the State.
 

 "A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered." N.C. Gen. Stat. § 15A-1444(a) (2017). "[A] jurisdictional default, such as a failure to comply with Rule 4 precludes the appellate court from acting in any manner other than to dismiss the appeal."
 
 State v. Hammonds
 
 ,
 
 218 N.C. App. 158
 
 , 162,
 
 720 S.E.2d 820
 
 , 823 (2012) (citation and quotation marks omitted). However, a writ of certiorari may be issued "to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action." N.C. R. App. P. 21(a)(1) (2017). The power to do so is discretionary and may only be done in "appropriate circumstances."
 

 Id.
 

 We grant Defendant's petition for a writ of certiorari and now address the merits. We find no error in part, arrest judgment in part, and remand for sentencing in part.
 

 Analysis
 

 I.
 
 Sixth Amendment Right to Confront Witnesses
 

 Defendant first asserts that the trial court erred by allowing Officer Rigsby to testify about statements made to him by Ray after the robbery but before Defendant had been apprehended. He argues this violated
 
 *72
 
 his Sixth Amendment right to confront the witness against him. We disagree.
 

 "The standard of review for alleged violations of constitutional rights is
 
 de novo
 
 ."
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009). "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless [we find] that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2017).
 

 *318
 
 "The Confrontation Clause of the Sixth Amendment prohibits admission of 'testimonial' statements of a witness who did not appear at trial unless: (1) the party is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness."
 
 State v. Glenn
 
 ,
 
 220 N.C. App. 23
 
 , 25,
 
 725 S.E.2d 58
 
 , 61 (2012) (citing
 
 Crawford v. Washington
 
 ,
 
 541 U.S. 36
 
 ,
 
 124 S.Ct. 1354
 
 ,
 
 158 L.Ed.2d 177
 
 (2004) ). In this context, testimonial means "at a minimum[,] prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [statements given in] police interrogations."
 
 Crawford
 
 ,
 
 541 U.S. at 68
 
 ,
 
 124 S.Ct. at 1357
 
 ,
 
 158 L.Ed.2d at 203
 
 . Additionally,
 

 Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
 

 Davis v. Washington
 
 ,
 
 547 U.S. 813
 
 , 822,
 
 126 S.Ct. 2266
 
 , 2273-74,
 
 165 L.Ed.2d 224
 
 , 237 (2006).
 

 "In determining whether a declarant's statements are testimonial, courts should look to all of the relevant circumstances."
 
 Michigan v. Bryant
 
 ,
 
 562 U.S. 344
 
 , 369,
 
 131 S.Ct. 1143
 
 , 1162,
 
 179 L.Ed.2d 93
 
 , 114 (2011). Factors for the courts to consider include:
 

 (1) the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred; (2) objective determination of whether an ongoing emergency existed; (3) whether a threat remained to first responders and the public; (4) medical condition of declarant; (5) whether a nontestimonial encounter evolved into a testimonial one; and (6) the informality of the statement and circumstances surrounding the statement.
 

 Glenn
 
 ,
 
 220 N.C. App. at 26
 
 ,
 
 725 S.E.2d at 61
 
 (citation and quotation marks omitted).
 

 Here, Ray's statements to Officer Rigsby were made in an effort to assist in the apprehension of armed suspects. When Officer Rigsby arrived at Ray's home to investigate the robbery call, the armed suspects had not been found, and Ray was "very shaken up, was fumbling over his words and talking so fast, it sounded like he was speaking another
 
 *319
 
 language." Once Ray had calmed down, he informed Officer Rigsby that a group of black males had robbed him, that one of them had put a snubnosed revolver to the back of his head, and that another had worn a clown mask, and that the suspects had fled in a silver car. Ray also provided information that one of the individuals involved in the robbery had on red apparel.
 

 Shortly after Ray had made these statements, Officer Duke informed Officer Rigsby that she had found the vehicle and suspects matching the description provided by 911 communications. Officer Rigsby immediately left Ray to assist Officer Duke because "[i]t was known that the robbery included handguns and [O]fficer Duke was by herself with three to four possible subjects."
 

 Even though the suspects had already fled Ray's home, there was still an ongoing emergency that posed danger to the public. Under these circumstances, Ray's statements to Officer Rigsby were nontestimonial because they were provided in an effort to assist police in meeting an ongoing emergency and to aid in the apprehension of armed, fleeing suspects. The Confrontation Clause of the Sixth Amendment only applies to testimonial
 
 *73
 
 statements and, so, does not bar the introduction of Ray's statements to Officer Rigsby. Therefore, the trial court did not err in allowing Ray's statements to be admitted into evidence.
 

 II.
 
 Motion to Dismiss
 

 Defendant next argues that the trial court erred in denying his motion to dismiss each of the charges against him. We discuss each charge in turn.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (citation omitted).
 

 "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor."
 
 State v. Miller
 
 ,
 
 363 N.C. 96
 
 , 98,
 
 678 S.E.2d 592
 
 , 594 (2009).
 

 *320
 
 A.
 
 Robbery with a Dangerous Weapon
 

 Defendant contends the trial court erred in denying his motion to dismiss the robbery charge because the evidence failed to show that Defendant either committed the robbery himself or acted in concert with the actual perpetrators. We disagree.
 

 "The essential elements of the crime of robbery with a dangerous weapon, or armed robbery, are: (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim."
 
 State v. Sullivan
 
 ,
 
 216 N.C. App. 495
 
 , 501-02,
 
 717 S.E.2d 581
 
 , 585-86 (2011) (
 
 purgandum
 

 [1]
 
 ).
 

 In the commission of a crime, to prove that a defendant was acting in concert,
 

 [i]t is not ... necessary for a defendant to do
 
 any particular act
 
 constituting at least part of a crime in order to be convicted of that crime under the concerted action principal so long as (1) he is present at the scene of the crime
 
 and
 
 (2) the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.
 

 State v. Williams
 
 ,
 
 299 N.C. 652
 
 , 656-57,
 
 263 S.E.2d 774
 
 , 778 (1980) (citation omitted). "If two or more persons join in a purpose to commit robbery with a dangerous weapon, each of them, if actually or constructively present, is guilty of that crime if the other commits the crime, if they shared a common plan to commit that offense."
 
 State v. Hill
 
 ,
 
 182 N.C. App. 88
 
 , 92,
 
 641 S.E.2d 380
 
 , 385 (2007).
 

 "While actual distance from the crime scene is not always controlling in determining constructive presence, the accused must be near enough to render assistance if need be and to encourage the actual perpetration of the crime."
 
 State v. Buie
 
 ,
 
 26 N.C. App. 151
 
 , 153,
 
 215 S.E.2d 401
 
 , 403 (1975) (citations omitted). Furthermore, "[t]he theory of acting in concert does not require an express agreement between the parties.
 

 *321
 
 All that is necessary is an implied mutual understanding or agreement to do the crimes."
 
 Hill
 
 ,
 
 182 N.C. App. at 93
 
 ,
 
 641 S.E.2d at 385
 
 (2007) (citation omitted).
 

 In the present case, even though Defendant was not identified at the scene of the
 
 *74
 
 crime, the jury could have made reasonable inferences from the evidence that Defendant acted in concert to commit robbery with a dangerous weapon. At trial, Pipkin, who was at the scene of the crime, testified that he saw a car fly by him and heard that same car hit a large speed bump and blow out a tire as it was fleeing. The Granville County Sheriff's Department reported a silver car was involved in an armed robbery involving three to four suspects. Officer Duke testified that less than a minute after receiving the 911 communication over the radio, she found Defendant changing a flat tire on his vehicle, along with two other individuals, less than a quarter mile away from the scene of the crime. Additionally, Ray's debit card was found in close proximity to Defendant's vehicle where Defendant was changing the flat tire. The mask, snubnosed revolver, and the suspect wearing a red hat and red clothing all matched the descriptions provided by Ray and were located or recovered at or near Defendant's vehicle.
 

 When viewed in the light most favorable to the State, substantial evidence was introduced at trial sufficient to support a reasonable inference that Defendant acted in concert to commit robbery with a dangerous weapon. Therefore, the trial court did not err by denying Defendant's motion to dismiss the robbery with a dangerous weapon charge.
 

 B.
 
 Possession of Stolen Goods and Possession of Marijuana
 

 Defendant argues that the trial court erred in denying his motions to dismiss the felony charges of possession of stolen goods and possession of marijuana because he never had actual or constructive possession of the stolen debit card or the marijuana. We disagree.
 

 The elements of the crime of possession of stolen goods are: "(1) possession of personal property; (2) which has been stolen; (3) the possessor knowing or having reasonable grounds to believe the property to have been stolen; and (4) the possessor acting with a dishonest purpose."
 
 State v. Tanner
 
 ,
 
 364 N.C. 229
 
 , 232,
 
 695 S.E.2d 97
 
 , 100 (2010) (citation omitted). "[A] conviction for felonious possession of marijuana requires proof that defendant was in possession of more than one and one-half ounces (or approximately 42 grams) of marijuana."
 
 State v. Ferguson
 
 ,
 
 204 N.C. App. 451
 
 , 459,
 
 694 S.E.2d 470
 
 , 476 (2010) (citation and quotation marks omitted).
 

 *322
 
 Our Supreme Court has explained what is necessary to prove possession:
 

 In a prosecution for possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials. Proof of nonexclusive, constructive possession is sufficient. Constructive possession exists when the defendant, while not having actual possession, ... has the intent and capability to maintain control and dominion over the [contraband]. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. However, unless the person has exclusive possession of the place where the [contraband] [is] found, the State must show other incriminating circumstances before constructive possession may be inferred.
 

 State v. Matias
 
 ,
 
 354 N.C. 549
 
 , 552,
 
 556 S.E.2d 269
 
 , 270-71 (2001) (citations and quotation marks omitted). "Constructive possession depends on the totality of the circumstances in each case. No single factor controls, but ordinarily
 
 the questions will be for the jury
 
 ."
 
 State v. Butler
 
 ,
 
 147 N.C. App. 1
 
 , 11,
 
 556 S.E.2d 304
 
 , 311 (2001) (citation omitted),
 
 aff'd
 
 ,
 
 356 N.C. 141
 
 ,
 
 567 S.E.2d 137
 
 (2002).
 

 This court has previously found incriminating circumstances sufficient to prove non-exclusive, constructive possession where there was: (1) evidence the defendant had a "specific or unique connection to the place where the [items] were found"; (2) evidence the defendant "behaved suspiciously, made incriminating statements ...., or failed to cooperate with law enforcement"; (3) indicia of the defendant's control over the place
 
 *75
 
 where the contraband was found; or (4) other incriminating evidence in addition to the fact that the items were located near the defendant.
 
 Ferguson
 
 ,
 
 204 N.C. App. at 460-64
 
 ,
 
 694 S.E.2d at 477-80
 
 (2010) (citations omitted).
 

 Here, the State presented substantial evidence that tended to establish that Defendant had constructive possession of both the debit card and the marijuana. The debit card with Ray's name on it and the marijuana were both found in close proximity to Defendant and his car, which he admitted he owned. Because of their proximity to the debit card and marijuana, Defendant and those with whom he acted in concert had the
 
 *323
 
 ability to exercise control over the contraband. Additionally, Officer Duke spotted Defendant's car and the suspects about one minute after receiving information from the Granville County Sheriff's Department. The brief period of time between the robbery and the locating of the suspects with the stolen debit card supports an inference that Defendant had knowledge of the robbery and the presence of Ray's debit card.
 

 Based upon the totality of the circumstances, there was substantial evidence from which a reasonable juror could conclude that Defendant had constructive possession of both the debit card and the marijuana. The "evidence is for the jury to weigh, not the trial court, and it is certainly not for the appellate courts to reweigh ... [because] [w]hen a trial court rules on a motion to dismiss, the court gives considerable deference to the State's evidence."
 
 State v. Chekanow
 
 ,
 
 370 N.C. 488
 
 , 499,
 
 809 S.E.2d 546
 
 , 554 (2018) (
 
 purgandum
 
 ). Therefore, the trial court did not err in denying Defendant's motion to dismiss because the State introduced sufficient incriminating circumstances to prove that Defendant had constructive possession of both the stolen debit card and the marijuana.
 

 III.
 
 Closing Arguments
 

 Defendant next argues that the trial court abused its discretion in failing to intervene
 
 ex mero motu
 
 when the State referred to Defendant's gang ties in its closing argument. We disagree.
 

 North Carolina General Statute § 15A-1230(a) provides that in closing arguments,
 

 an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice.
 

 N.C. Gen. Stat. § 15A-1230(a) (2017).
 

 "The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene
 
 ex mero motu
 
 ."
 
 State v. Waring
 
 ,
 
 364 N.C. 443
 
 , 499,
 
 701 S.E.2d 615
 
 , 650 (2010) (citation and quotation marks omitted). "In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have
 
 *324
 
 intervened on its own accord."
 
 State v. Huey
 
 ,
 
 370 N.C. 174
 
 , 179,
 
 804 S.E.2d 464
 
 , 469 (2017) (citation omitted).
 

 "[W]hen defense counsel fails to object to the prosecutor's improper argument and the trial court fails to intervene, the standard of review requires a two-step analytical inquiry: (1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial."
 
 Huey
 
 , 370 N.C. at 179,
 
 804 S.E.2d at 469
 
 . Our Supreme Court explained:
 

 [A]lthough control of jury argument is left to the discretion of the trial judge, trial counsel must nevertheless conduct themselves within certain statutory parameters. It is improper for lawyers in their closing arguments to become abusive, inject their personal experiences, express their personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record. Within these statutory confines, we have long recognized that prosecutors are given wide
 
 *76
 
 latitude in the scope of their argument and may argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom.
 

 If an argument is improper, and opposing counsel fails to object to it, the second step of the analysis requires a showing that the argument is
 
 so grossly
 
 improper that a defendant's right to a fair trial was prejudiced by the trial court's failure to intervene. Our standard of review dictates that only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting
 
 ex mero motu
 
 an argument that defense counsel apparently did not believe was prejudicial when originally spoken. It is not enough that the prosecutors' remarks were undesirable or even universally condemned. For an appellate court to order a new trial, the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.
 

 Id.
 

 at 179-80
 
 ,
 
 804 S.E.2d at 469-70
 
 (
 
 purgandum
 
 ).
 

 Here, Defendant challenges the following statements made by the State during closing arguments:
 

 *325
 
 I contend to you that they're gang members from Durham, and when he says he is like his big brother, I'll bet he is. He's his big brother gang member and they're going to do anything to protect their gang member. Because they got caught. And they have nothing to lose. They're pulling their time, now. But they want to help their gang member buddy out. And that's why they got up here and told so many lies, to help their big brother gang member out. We have to figure what kind of society and what kind of county we want to live in. Do want to live somewhere where gang people from Durham can come and rob a little old man who didn't have anything. He gave them all that he [had] which was the debit card, but there wasn't any money in his account because he hadn't even gotten his disability check. Is that the kind of county and society we want to live in?
 

 Defendant called co-defendants John Morrell III and Tyquon Smith as witnesses. Both testified they were gang members, and Smith admitted that he was in the same gang as Defendant. The two admitted they did not live in Butner, and John Morrell stated they drove to Butner from Durham on the night of the robbery.
 

 The prosecutor's statements here merely commented on the evidence presented by Defendant at trial, i.e., Defendant and his associates were Durham gang members. Also, the State's argument did not center around Defendant's gang-involvement. The prosecutor's only reference to gang-involvement was in one paragraph during her entire closing argument. As such, in light of the overall factual circumstances, the prosecutor's reference to Defendant's gang membership did not infect "the trial with unfairness [such] that they rendered the conviction fundamentally unfair."
 
 Waring
 
 , 364 N.C. at 500,
 
 701 S.E.2d at 650
 
 (citation omitted). Moreover, the prosecutor's commentary on the evidence has not been shown to be "calculated to lead the jury astray."
 
 State v. Jones
 
 ,
 
 355 N.C. 117
 
 , 133,
 
 558 S.E.2d 97
 
 , 107-08 (2002). Instead, the prosecutor's statements were supported by the evidence introduced by Defendant at trial, and in light of the evidence presented at trial, were not improper.
 

 In addition, "[t]his Court has consistently held that a prosecutor may argue that a jury is the voice and conscience of the community ... and [a] prosecutor may also ask the jury to send a message to the community regarding justice."
 
 State v. Barden
 
 ,
 
 356 N.C. 316
 
 , 367,
 
 572 S.E.2d 108
 
 , 140 (2002) (
 
 purgandum
 
 ). Here, the prosecutor ended her argument by urging the jury to be the voice and conscience of Granville
 
 *326
 
 County by thinking about "the kind of county and society we want to live in." The prosecutor's argument was simply a reminder to the jury that they should carefully consider their duties and responsibilities as jurors, and that the quality of justice in Granville County ultimately rests with citizens who properly perform their function as jurors. Because the prosecutor's
 
 *77
 
 statements during closing arguments were not improper, we find no error.
 

 IV.
 
 Jury Instruction
 

 Defendant argues that the trial court committed plain error by instructing the jury on "acting in concert" because it was unsupported by the evidence and directly impacted the jury's decision to convict. We disagree.
 

 "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2017). "In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4) (2017). Defendant concedes that he failed to object at trial, but specifically argues plain error on appeal.
 

 "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993) (citation omitted). Plain error review "requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 516,
 
 723 S.E.2d 326
 
 , 333 (2012).
 

 "Under the doctrine of acting in concert, if two or more persons are acting together in pursuance of a common plan or purpose, each of them, if actually or constructively present, is guilty of any crime committed by any of the others in pursuance of the common plan."
 
 State v. Barts
 
 ,
 
 316 N.C. 666
 
 , 688-89,
 
 343 S.E.2d 828
 
 , 843 (1986) ;
 
 State v. Williams
 
 ,
 
 299 N.C. 652
 
 , 656-57,
 
 263 S.E.2d 774
 
 , 777-78 (1980). Even if the Defendant had timely objected to the acting in concert jury instruction, the instruction was supported by the evidence and did not amount to error.
 

 *327
 
 Here, Defendant and two others were located approximately a quarter-mile from the location where the robbery took place. Defendant was changing a tire on a car that matched the description of the vehicle in which the robbers had fled the scene and a witness heard a tire blew out. Defendant had a mask in his vehicle that matched the description of the mask used in the robbery; the victim's stolen debit card was located in close proximity to Defendant, as was a snubnosed revolver similar to the one used in the robbery.
 

 Again, Pipkin testified that he saw a car fly by him and heard that same car hit a large speed bump as it was fleeing. Officer Duke found Defendant changing a flat tire of a car less than a quarter mile away from the scene of the crime after hearing the 911 communications report that a silver car was involved in an armed robbery. In addition, the snubnosed handgun reported to have been used at the scene of the crime was about fifteen feet from Defendant's car.
 

 Even if Defendant was not the person who had robbed Ray of his debit card, there was substantial evidence that in the early morning hours of November 3, 2015, Defendant was aiding or otherwise assisting others in a common plan or purpose to rob Ray and flee the scene. Thus, an acting in concert instruction was supported by the evidence, and, therefore, the trial court did not err in giving this instruction. Because Defendant has not shown that the trial court erred in giving the acting in concert instruction, he cannot show plain error.
 

 V.
 
 Double Jeopardy
 

 Defendant argues, for the first time on appeal, that he was improperly sentenced for both robbery with a dangerous weapon and possession of stolen goods, when the latter involved proceeds from the former, in violation of the Constitution's prohibition against double jeopardy. Defendant concedes that he failed to object at sentencing on double jeopardy grounds.
 

 *78
 
 "A defendant's failure to object below on constitutional double jeopardy grounds typically waives his or her right to appellate review of the issue. ... Further, our Rules of Appellate Procedure require a defendant to make a timely request, objection, or motion below, stating the specific grounds for the desired ruling in order to preserve an issue for appellate review."
 
 State v. Harding
 
 , --- N.C. App. ----, ----,
 
 813 S.E.2d 254
 
 , 261 (
 
 purgandum
 
 ),
 
 disc. review denied
 
 , --- N.C. ----,
 
 817 S.E.2d 205
 
 (2018). However, if "[t]he sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally
 
 *328
 
 imposed, or is otherwise invalid as a matter of law," it may be subject to appellate review even though no objection, exception or motion was made at trial. N.C. Gen. Stat. § 15A-1446(d)(18) (2017). We address the merits of defendant's arguments and arrest judgment for his conviction of possession of stolen goods.
 

 "[T]he Legislature created the statutory offense of possession of stolen goods as a substitute for the common law offense of larceny in those situations in which the State could not provide sufficient evidence that the defendant stole the property at issue."
 
 State v. Moses
 
 ,
 
 205 N.C. App. 629
 
 , 640,
 
 698 S.E.2d 688
 
 , 696 (2010) (citation omitted). In light of this determination, "the Legislature also did not intend to subject a defendant to multiple punishments for both robbery and the possession of stolen goods that were the proceeds of the same robbery."
 

 Id.
 

 The "[p]rinciples of legislative intent ... proscribe punishment for possession during the course of the same conduct, and where the property is the same property."
 
 State v. Hendricksen,
 
 --- N.C. App. ----, ----,
 
 809 S.E.2d 391
 
 , 395 (citation and quotation marks omitted),
 
 review denied
 
 , --- N.C. ----,
 
 812 S.E.2d 856
 
 (2018).
 

 In the present case Defendant was convicted of robbery with a dangerous weapon, possession of stolen goods, and possession of marijuana. Defendant's convictions for possession of stolen goods and possession of marijuana were consolidated and that sentence was to run concurrently with the robbery with a dangerous weapon sentence. However, in light of
 
 Moses
 
 and
 
 Hendricksen
 
 , we are required to arrest judgment on Defendant's sentence for possession of stolen goods.
 

 Furthermore, Defendant's conviction of misdemeanor possession of stolen goods was consolidated with his conviction of misdemeanor possession of marijuana, which required him to serve a sentence of 60 days in custody. Possession of less than one-half ounce of marijuana is a Class 3 misdemeanor.
 
 N.C. Gen. Stat. § 90-95
 
 (d)(4). A defendant with a prior record level III convicted of a Class 3 misdemeanor can only be sentenced to a maximum of 20 days in custody. N.C. Gen. Stat. § 15A-1340.23(c). Because we arrested judgment for possession of stolen goods, we remand for the resentencing of Defendant's conviction of possession of marijuana.
 

 Conclusion
 

 The trial court properly admitted Ray's statements because they were nontestimonial. The trial court properly denied Defendant's motions to dismiss because the State presented substantial evidence of each element to support a conviction for each offense. The trial court
 
 *329
 
 did not abuse its discretion by not intervening
 
 ex mero motu
 
 during the prosecutor's closing statements because there was nothing improper about the prosecutor's closing arguments. The trial court did not err in instructing the jury on acting in concert because the instruction was supported by the evidence introduced at trial. We arrest judgment on Defendant's conviction for possession of stolen goods, and remand for resentencing on the possession of marijuana conviction.
 

 NO ERROR IN PART; ARREST JUDGMENT IN PART; REMANDED IN PART.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 Our shortening of the Latin phrase "
 
 Lex purgandum est.
 
 " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use
 
 purgandum
 
 to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.